1817.

REMSEN
v.
REMSEN.

[*495]

REMSEN and others *against* REMSEN and others.

General principles on which examinations before a master are to be conducted, regulating and settling the *practice*, as to the mode of taking testimony, on an *order of reference* to a master.

June 13th.

THIS was a question of *practice*, as to the mode of taking testimony, on an order of reference, before a *master*, and came up on the report of *James A. Hamilton*, one of the *masters* of this Court. He stated, that under an order of reference, to take and state an account between the parties in this case, the parties appeared before him, and it was urged by the counsel for the defendant, that the plaintiff should exhibit his charges *in writing*, and that the testimony, in support of the allegations of the parties, should be taken by the master *in writing, privately, upon interrogatories;* and that the depositions so taken should not be disclosed, until the whole evidence of both parties was taken. That, this course of proceeding being objected to, the master decided in favor of the proceeding contended for on the part of the defendant, as being according to the established practice of the Court.

[*496]

*J. Stoughton*, for the defendants, contended, that proceedings before a master, in respect to the taking of testimony, were analogous to the proceedings in the cause before publication, and that the charges, interrogatories, and *examinations of witnesses, should be in writing; and that the same policy which dictated secrecy with respect to the testi-

382

mony previous to the hearing, dictated it in respect to the testimony adduced before the master. The same evils were to be dreaded, and the same remedy to be applied. He cited 1 *Turner's Pr.* 103—5. 110. to show that the practice in *England* is to prepare and file interrogatories, which are settled by the master, for the examination of *a party.* That the charges of the plaintiff, or his statement of the several items or matters claimed, are in writing, and of which the forms are given in the books. (1 *Turn.* 115. 118. 2 *Turn.* 631. *a.*) That the defendant pursues a similar course, in respect to his charges and discharges. (2 *Turn.* 640. &c. 1 *Turn.* 204.) That the interrogatories for the examination of a party are drawn by the opposite party, and settled by the master. That each party draws his interrogatories for the examination of witnesses, and files them with the master, and serves them on the opposite party. That the counsel draw and settle interrogatories for the examination of *witnesses;* and these are not settled by the master, as in the case of the examination of *a party.* (1 *Turner,* 125, 126. 2 *Harr.* 102.) It was settled, in *Parkinson* v. *Ingram,* (3 *Ves.* 603.) that it was the practice for the master himself to examine the witnesses, on an order of reference. That the practice in this state had, indeed, been more loose and irregular; but there was no judicial sanction of any departure from the *English* practice, which is more precise and accurate, and tends more to despatch. He contended, that, to prevent abuse, the depositions of the witnesses should be kept private, until the whole of the testimony was closed; and he referred to the case of *Shepherd* v. *Collyer,* in 1744, cited in *Parkinson* v. *Ingram,* (3 *Ves.* 608.) as being a decision that depositions before the master are to be kept private, until all the testimony before him is closed.

*Riggs,* contra, said, that the practice in the *English* Court of Chancery, on the points mentioned in the report, was not very clearly stated in the books. That the practice, as laid down by *Turner,* was not supported by any adjudication; nor does his book hold up the idea that the examination of the witnesses before the master was to be in secret. The case of *Parkinson* v. *Ingram* decided nothing on that point, and only settled, that the testimony on a reference was to be taken by the master, and not by the examiner. That the practice which had prevailed here was more easy and convenient, and tended more to cheapness and despatch, than that which had been laid down in the master's report. That in *England* orders of reference are drawn with great care and precision, according to established forms, and contain

1817.

REMSEN
v.
REMSEN.

[ * 497 ]

383

the principles upon which the account is to be taken; that the masters there are distinguished lawyers, devoting their time exclusively to the duties of that office; that solicitors are a distinct class of the profession, and the clerks of the Court are the agents of the parties; all which circumstances may justify a course of practice in *England*, that would not be altogether proper here. It is laid down in *Wyatt's P. R.* (364.) that parties were, at their peril, to make full proof before publication, and that, on a reference, if any particular points were not fully proved, or could not properly be examined before the hearing, the master must direct the parties to draw interrogatories to such points. That, as a general rule, it might be proper that charges and discharges should be in writing; but it cannot be proper that the parties should, at their peril, reduce every thing to writing, by way of charge and discharge, in the first instance, because, in the progress of taking the account, new items may arise, which can only be specified when they are developed. The rule must be subject to reasonable exceptions. He contended, that it appeared from *Wyatt's P. R.* 364. and *Cur. Cancel.* 427, 428., that investigations and admissions take place orally before *the master; for he is to make a note of what is admitted, which the party is to sign, and he appoints the time and place for the parties, with their counsel, solicitors, clerks, &c. to attend. He admitted, that witnesses were usually examined before the master, in *England*, on written interrogatories; but he insisted, that it was no where laid down, that this mode was indispensable, and he wholly denied the authority and practice of secret examinations before the master. He said, that if the parties were compelled, at their peril, to examine, in full, before publication, and if orders of reference were so drawn as to show what had been decided, and the principles on which the taking of the account was to proceed, and no witness was allowed to be examined before the master, who had been examined in chief, without a special order, and if such second examination was to be confined to new points, as is the doctrine in the books, (2 *Dickens*, 508.) the principles of the Court would be maintained.

The testimony taken before the master, whether in writing or not, never comes before the Court as the testimony in chief does, unless the master is directed to send it up, and then it is not filed, so as to form part of the record, as is the case with the testimony in chief. The examination of the parties, on taking an account, is never of course, but is done on special order, grounded on special reasons appearing to the Court.

THE CHANCELLOR. I am not surprised that there should be doubts as to the practice in this case. So late as *Parkinson* v. *Ingram*, (3 *Vesey*, 603.) it was a serious question, whether the master could take the examination of a witness in any case, and whether all examinations, as well after as before a decree, must not be taken by the examiner. But it was declared, in that case, to be the settled practice for the master to take the examinations on references before him; and it would seem that the witnesses were summoned, *under the usual *subpœna*, to appear, and answer; and that the label to it was the only part which explained where, and before whom, he was to go for examination; and if a commission was necessary to examine witnesses in the country, the master certified the fact, and the commission issued of course.

[ * 499 ]

The only inquiry now is, in what manner testimony ought to be taken before the master.

The books assume the practice to be settled, that the parties and witnesses are to be examined before the master upon written *interrogatories*; and that in the case of the examination of a party, the interrogatories are settled by the master, and in the case of a witness, they are settled by the counsel. (The attorney-general *arg.* in *Parkinson* v. *Ingram, sup. Stanyford* v. *Tudor, Dickens,* 548. *Hughes* v. *Williams,* 6 *Vesey,* 459. *Purcell* v. *Macnamara,* 17 *Vesey,* 434. and cases cited upon the argument.) Sometimes the master is directed to settle the interrogatories in the case of a witness, as in *Browning* v. *Barton,* (*Dickens,* 508.) and exceptions may be taken to the interrogatories as settled by him. (6 *Vesey,* 759.) But though the exhibition of interrogatories, duly settled, be the usual mode of examination, appearing in the books, I do not apprehend that it is indispensable. The practice with us, as I have reason to believe, has been more relaxed, and oral examinations have frequently, if not generally, prevailed. This appears to me to be a question merely of convenience, and does not involve any principle of policy, or of right; but whether examinations shall be secret, and to what extent they shall be carried, suggests much more important considerations.

If examinations are protracted, from day to day, for any length of time, there is very great danger of abuse from public examinations, by which parties are enabled to detect the weak parts of the adversary's case, or of their own, and to hunt up or fabricate testimony to meet the pressure *or exigency of the inquiry. It is to guard against this abuse, that examinations in chief are not permitted, after publication, and that Courts of law will not grant new trials, merely to enable a party to accumulate testimony on any given point,

[ * 500 ]

1817.

Remsen
v.
Remsen.

or to oppose that which was taken on the opposite side. It is also upon the same grounds, that a witness, who .has been examined in chief before the hearing, cannot be re-examined before the master, without an order, and, then, not to any matter to which he had before been examined; (*Dickens,* 508.) and that a witness, once examined, before the master, cannot be re-examined, without an order. (2 *Ves.* 270. 2 *Maddock's Ch.* 392, 393.) In trials at common law, the cause is heard, and the verdict taken at one sitting, and all opportunity for getting up suppletory proof is precluded.

On the other hand, there are many inconveniences (which were alluded to by the counsel) to be apprehended, from requiring all depositions to be secret, on taking an account before the master. In long and complicated accounts, it seems almost impossible to reduce the requisite inquiries to writing, in the first instance, and to know what questions to put, except as they arise in the progress of the inquiry; and it is a little surprising that no clear and decided evidence can be found, in the books, of the practice of secret examinations, if such be, indeed, the settled practice in the *English* chancery.

The general rules which are to be deduced from the books, or which ought to prevail on the subject of examinations before the master, and which appear to me to be best calculated to unite convenience and despatch with sound principle and safety, are,

1. That the parties should make their proofs as full, before publication, as the nature of the case requires or admits of, to the end that the supplementary proofs, before the master, may be as limited as the rights and responsibilities of the parties will admit.

[ * 501 ]

*2. That orders of reference should specify the principles on which the accounts are to be taken, or the inquiry proceed, as far as the Court shall have decided thereon; and that the examinations before the master should be limited to such matters within the limits of the order, as the principles of the decree or order may render necessary.

3. That no witness in chief, examined before publication, nor the parties, ought to be examined before the master, without an order for that purpose, which order usually specifies the subject and extent of the examination; and a similar order seems to be requisite when a witness, once examined, is sought to be again examined before the master, on the same matter. But it is understood to be the settled course of the Court, (1 *Vern.* 283. *anon.* 1 *Vern.* 470. *Witcherly* v. *Witcherly.* 2 *Ch. Cas.* 249. *Everard* v. *War-* 386

*ren. Mosely,* 252. *Morely* v. *Bonge. Robinson* v. *Cumming,* 2 *Atk.* 409. and 2 *Fonb.* 452. 460, 461, 462.) that upon the defendant accounting before the master, he is to be allowed, on his own oath, being credible and uncontradicted, sums not exceeding 40 shillings each; but then he must mention to whom paid, for what, and when, and he must swear positively to the fact, and not as to belief only, and the whole of the *items,* so established, must not exceed 100*l.,* and the defendant cannot, by way of charge, charge another person in this way. The *forty* shillings sterling was the sum established in the early history of the Court, and, perhaps twenty dollars would not now be deemed an unreasonable substitute.

4. That the master ought, in the first instance, to ascertain from the parties, or their counsel, by suitable acknowledgments, what matters or *items* are agreed to or admitted; and then, as a general rule, and for the sake of precision, the disputed *items* claimed by either party ought to be reduced to writing by the parties, respectively, by way of charges and discharges, and the requisite proofs *ought then to be taken on written interrogatories, prepared by the parties, and approved by the master, or by *viva voce* examination, as the parties shall deem most expedient, or the master shall think proper to direct, in the given case. That the testimony may be taken in the presence of the parties, or their counsel; (except when by a special order of the Court it is to be taken secretly;) and it ought to be reduced to writing, in cases where the master shall deem it advisable, by him, or under his direction, as well where a party as where a witness is examined.

5. That in all cases where the master is directed by the order to report the proofs, the depositions of the witnesses should be reduced to writing by the master, and subscribed by the witnesses, and the depositions returned with his report to the Court.

6. That when an examination is once begun before a master, he ought, on assigning a reasonable time to the parties, to proceed, with as little delay and intermission as the nature of the case will admit of, to the conclusion of the examination, and, when once concluded, it ought not to be opened for further proof, without special and very satisfactory cause shown.

7. That after the examination is concluded, in cases of reference to take accounts, or make inquiries, the parties, their solicitors, or counsel, after being provided by the master with a copy of his report, (and for which the rule of the 1st of *November* last makes provision,) ought to have a day as-

1817.

REMSEN
v.
REMSEN.

[ * 502 ]

1817.

MATTER OF
COSTER

signed them to attend before the master, to the settling of his report, and to make objections, in writing, if any they have; and when the report is finally settled and signed, the parties ought to be confined, in their exceptions to be taken in Court, to such objections as were overruled or disallowed by the master.

These being the general principles on which examinations before the master are to be conducted, I shall direct, that so much of the master's report, in this case, as contains *a decision, that the testimony be taken privately, and exclusively upon interrogatories in writing, be overruled; and that the parties be at liberty to examine the witnesses orally unless the master shall determine, for special reasons applicable to that examination, or any part of it, that the interrogatories ought to be reduced to writing.