ROBERT JENKINS, Assignee, etc.

*v.*

THE INTERNATIONAL BANK OF CHICAGO *et al.*

*Filed at Ottawa February 3, 1881—Rehearing denied March Term, 1881.*

1. WRIT OF ERROR—*by assignee of bankrupt.* The assignee of a bankrupt may prosecute a writ of error to reverse a decree or judgment rendered against the bankrupt before the appointment of the assignee.

2. USURY—*right to have credited usurious payments.* In case of a continuous, connected course of business with a bank, not at any time fully closed and settled by payment, consisting of many notes, upon which usurious interest has been paid from time to time for extensions and renewals, the debtor will have the right in equity to have all the payments of interest made by him in excess of six per cent credited upon the present evidences of indebtedness resulting, in whole or in part, from such prior dealings. Where a note or debt of any kind (on which unlawful interest has been paid or reserved), has been paid in whole or in part by the discount of a new note, by the application thereto of the proceeds, or a part of the proceeds, of the new note, made through the form of a check drawn by the debtor upon the fund provided in whole or in part by the discount of the new note, it will be in substance a renewal of the old note or debt, and in such case the amount of usurious interest paid in any part of such transaction is open to investigation.

3. But where a debt or note is created or made, not connected with the principal notes sued on, by the general course of dealings or otherwise, and such independent debt is paid by the debtor, without passing any part thereof into the consideration of such principal notes, directly, or through some intervening transaction, no inquiry can be made in the pending litigation as to the amount of interest paid or reserved in such separate transaction. In

such case, the debtor can not recover back by credit or otherwise interest thus voluntarily paid, although in excess of the legal rate.

4. SAME—*account rendered does not preclude defence of usurious payments.* Where a bank made out, from time to time, detailed statements of a debtor's account, running through several years, which statements were retained by the debtor without any objection to the same or any items thereof, it was *held* that this did not preclude the court, on a bill filed for an account, from investigating the question of usurious payments, and allowing the debtor credit for the same. Such accounts will be taken as correct, on the basis the business is shown to have been transacted except so far as shown specifically to have been in error.

5. SAME—*release does shut out defence.* The giving of various settlement checks and releases in full, from time to time, in a continuous and connected transaction between a banker and a customer, will not preclude the defence of usury and the right to show payments of usurious interest in the bank account. Parties will not be allowed thus to evade the statute.

6. CHANCERY PRACTICE—*master's report—exceptions.* Where the court, in referring a cause to the master to state an account, gives an erroneous direction as to the basis upon which to state the same, it will be taken, in the absence of exceptions to the master's report, that the account was taken on the basis directed, and the party aggrieved may assign such direction for error, without having taken exception to the master's report.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on error to the Circuit Court of Cook county.

This is a writ of error, seeking to reverse the judgment of the Appellate Court of the First District, affirming a decree of the circuit court of Cook county, rendered April 25, 1878, in which decree the circuit court found Samuel J. Walker indebted to the International Bank, on January 15, 1878, in the sum of $172,474; and for the satisfaction of this debt ordered the sale of certain collaterals before that time assigned and transferred by Walker to the bank. This decree was rendered in a suit begun in the circuit court by the International Bank, by bill filed February 17, 1875. Walker, and certain persons alleged to have an interest in the collaterals, were made defendants.

The bill sets out twenty-two different promissory notes made by Walker and payable to the bank, ranging in dates

from December 30, 1871, to April 14, 1874, and in amounts from $1000 to $41,756.67, and, in the aggregate, amounting, without interest, to the sum of about $189,500; and also charges Walker with liability, as guarantor, upon two notes of J. D. Kinney, dated in June, 1873, one for $7000, and one for $5000, making the demand of the bank presented against Walker, in amount (besides interest), about the sum of $191,500. The bill then sets out the collaterals, and charged that payments had been made, etc., and prays for an account between Walker and the bank, and that the true amount of Walker's indebtedness may be adjudged and the collaterals applied thereto.

The bill shows that many of these collaterals were assigned to the bank by Walker to secure, specifically, certain notes, some of them among the notes enumerated as above, and others being notes which, it is conceded in the bill, had been paid; and to show grounds for applying such collaterals to the debt now due, the bill sets forth divers agreements, among them one dated July 7, 1869, and signed by Walker, saying: "the undersigned has heretofore, and intends here-after, to borrow money" from the bank, * * * and "has heretofore and intends hereafter to deposit collateral security * * * to secure the payment of specific notes. Now, therefore, I do hereby agree that all and singular the collaterals given by me, or to be given, shall," at the option of the bank, "apply generally to *all notes* held at any time," by the bank, "executed by me * * * and to any and all notes negotiated for my account" by the bank; and another agreement, of like character, dated July 9, 1873, say-ing: " the undersigned has heretofore, and intends hereafter, to borrow money" from the bank, either on his own note or notes, or book accounts, or checks, or any other evidence of indebtedness, * * * and to secure the payment of said * * * evidences of indebtedness he has heretofore, and intends hereafter, to deposit collateral securities; and whereas, such securities were and will be hereafter given to secure the

payment of specific notes, checks, or other indebtedness, now, therefore,    *   *   *   "I do hereby agree that all and singular, the collaterals by me given, or to be given, as aforesaid, shall," at the option of the bank, "apply generally to all the notes,   *   *   *   book accounts, checks, or any other evidence of indebtedness to said bank."

The bill sets out that interest had been paid by Walker on the principal notes, respectively, up to certain dates named as to each note, ranging from October 1, 1873, to March 30, 1874; and also sets out certain collections made upon certain of the collaterals, and complains that Walker refuses to come to a settlement, etc.

Walker, in his answer, admits the making of the notes, but denies that he is at all in debt to the bank, and says such would appear upon a full, fair and equitable accounting between them,—and declares his desire that an account be taken.

The answer states that, in 1868, Walker began to transact business with the bank, and continued to do so until some time in 1874; that during that time he was extensively engaged in buying and selling real estate, and borrowed money from the bank, giving the bank sometimes his own notes and sometimes the notes of Henry H. Walker, which, in all such cases, were made merely as accommodation paper, and for his own accommodation solely.

The answer also, among other things, says: "And this defendant, further answering, insists and states it to be true, that all, or nearly all, of the loans of money made by this defendant from the said complainant, were made under and in pursuance of an unlawful, corrupt and usurious agreement and understanding between the said complainant and this defendant, to the effect that this defendant should pay to the said complainant, for the loan and forbearance of said money, interest thereon at and after the rate of one and one-half and two per cent per month, and upwards; and all extensions and renewals of said loans were made and secured upon agreements for rates of unlawful and usurious rates of inter-

est;" that he is unable to give the details, setting out reasons why he can not give details; and claiming that he is entitled to large credits upon the principal notes mentioned in the bill, for payments made thereon, and also for other large sums paid to the bank, over and above the lawful rate of interest, and which sums should, in equity, be credited to him upon the principal of the loans as they, from time to time, were made by him.

Defendant also claimed in his answer, to set-off against the alleged claims of complainant a very large sum of money which he alleged he had paid to complainant in the course of these dealings, "for the loan and forbearance of moneys upon unlawful, corrupt and usurious agreements, the sum of at least $400,000, over and above the lawful rates of interest under the statutes" of this State.

In the bill of the bank, as amended, it was alleged that divers settlements had taken place in the progress of this business, in which the accounts had been stated and balanced by settlement checks, and releases were executed by Walker as to all charges made theretofore against Walker, and insisted that accounts so adjusted should not be opened or investigated.

Walker also filed a cross-bill, in which he set out, in substance, the same matter contained in his answer, asking an account, the production of the books of the bank, and for a decree that the collaterals be surrendered to him, his indebtedness adjudged paid, and that the bank refund to him the just amount overpaid by him, as he alleged.

Issues were formed, proofs taken, a reference to the master had, and his report, and a final decree dismissing the cross-bill, and a finding, etc., as above stated.

In the progress of these proceedings, Walker having applied for an order for the production of the books of the bank, on January 12, 1876, the court entered an order sustaining objections to such production of the books, unless

Walker would,. by stipulation, waive the forfeiture of legal interest, so that, in taking the account in the cause, interest might be charged against Walker upon the loan or forbearance of money to him by the bank, at legal rate, notwithstanding any forfeiture thereof he might otherwise be entitled to ; and that, upon filing such stipulation, the court ordered the production of the books. Thereupon, Walker did file a stipulation conforming to the order, and the books were ordered to be exhibited.

In the answer of the bank (to Walker's cross-bill), filed June 29, 1875, it is alleged, among other things, that Walker, early in 1869, opened a bank account with it and made deposits, drew checks and drafts in the usual way, and became a borrower upon securities deposited, etc.; and that he sometimes repaid the money thus borrowed, at maturity, and, at other times, such loans were extended or renewed ; and that often, before the fire of October, 1871, and afterwards, "it furnished Walker with statements of the obligations, securities and collaterals held by it of him." The answer admits that he continued to do business with the bank until some time in 1874, * * * that he kept no regular or connected account of his deposits with, or of his checks against the bank, and did not keep a bank-book or pass-book. The answer alleges that Walker's bank account has been balanced, and that he has no balance due him thereon, but is indebted as charged in the bill.

It is also set up and charged in the answer, that the accounts have been frequently gone over and explained to Walker, by the officers of the bank, and a complete statement made to him ; that Walker fully understood them, and at such times did come to an accounting with the bank, and such accounts were stated between them and releases executed ; that the bank had settlements with him at divers times, viz: On September 1, 1870, and on September 14, 1871, embracing the interest account up to August 16, 1871, and July 7, 1873, and again on July 31, 1873, and on August 30,

1873, and again on November 9, 1873, and again on May 13, 1874.

In May, 1877, Walker amended his answer, by leave of the court, and in this amended answer, *inter alia,* the following is found:

" This defendant further answering hereby, under the statute in such case made and provided, gives notice that he intends to defend each and all of the contracts set out and alluded to in said bill of complaint, and sued upon in this cause by said complainant, on the ground that they and each and all of them are usurious."

On referring the case to the master, in July, 1877, the circuit court, among other things, directed the master, in stating the account, " not to consider the question of usurious payments of interest upon any of said notes."

The other facts of the case appear in the opinion.

Mr. W. T. BURGESS, Mr. J. N. BARKER, and Mr. M. W. FULLER, for the plaintiff in error.

Messrs. ROSENTHAL & PENCE, for the defendants in error.

Mr. CHIEF JUSTICE DICKEY delivered the opinion of the Court:

Walker having been declared a bankrupt pending this litigation, it is insisted by defendant in error that Jenkins, his assignee in bankruptcy, can not prosecute the writ of error in this case, because, as it is said, he was not a party to the suit before decree, and does not have any interest in the subject matter. This question was decided in favor of the right of the assignee in such a case to be heard in this court (in the case of *Jenkins* v. *Greenbaum et al.* 95 Ill. 11), and needs no further consideration here.

The objections raised by plaintiff in error to the validity of the charter of the defendant bank, are disposed of by the decision of this court in the case of *The People ex rel.* v.

*Loewenthal et al.* 93 Ill. 191, wherein the charter was held valid.

The question relating to the right of Walker, under such pleadings as are found in this case, to avail himself of the benefit of payments made, as of usurious interest, to the extent of disregarding the .usurious agreements, and applying as payments upon the principal all moneys paid as interest in excess of the amount allowed by law, has been determined in favor of that right in the case of *Jenkins* v. *Greenbaum et al. supra,* and the reasoning and authorities upon which that decision was placed need not be repeated here.

It is insisted, however, by defendants in error, that the question of the application of such payments can not be raised upon this record,—and this upon the position that (as is insisted) the record fails to show that any exceptions were taken to the master's report. This position can not be sustained. The court, in the order referring the cause to the master, gave specific directions to the master as to the basis upon which the account should be stated, and it is to be taken, (in absence of exceptions to the master's report), that the account was stated upon the basis laid down in the order of reference. That order is subject to review.

In the order of reference the master was directed, in ascertaining the amount due upon the several principal notes, " not to consider the question of usurious payments of interest upon any of said notes." This direction to the master was erroneous, and, for this reason alone, the decree of the circuit court ought to have been reversed by the Appellate Court.

There is evidence tending to prove that payments of usurious interest were made by Walker, which ought to be credited upon the notes in controversy. The circuit court, as we understand this record, without determining whether such payments were made or not, evidently held the inquiry immaterial or incompetent under the pleadings, and so directed the master not to consider the question. This was error.

Another question arises upon this record, and demands our consideration. The circuit court found "that at different times during the continuance of the dealings between Walker and the International Bank, accounts were presented to Walker by the bank, of amounts debited and credited to him upon the books of the bank; and that said accounts were retained by said Walker, without objection on his part, made either to the aggregate or the various items of said accounts; and that, up to the time of the commencement of this litigation, no objections had been made to the same; and that said accounts are not to be investigated by the master as to such general items; but said Walker may be allowed to prove, if he can, that there have been certain items included fraudulently in said accounts, or that there are specific credits to which he is entitled in said accounts."

It is insisted by plaintiff in error that this order was erroneous. If this order is to be understood as precluding an investigation as to payments of usurious interest except in regard to specific items, it can not be sustained. The proofs tend to show continuous relations between the bank and Walker, from 1868 up to the close of their transactions, the bank all the while occupying the position of creditor; and Walker that of debtor,—and that Walker at no time paid off in full his debt to the bank, and the contracts as to the use to be made of the collaterals, with other evidence in the case, tends to show that part, at least, of their dealings formed one continuous and connected transaction, with multifarious branches. If this be so, then, in so far as this is so, all moneys paid by Walker to the bank as interest under usurious contracts, agreements or arrangements, (in excess of the rate of six per cent per annum) in such part of this business on which any of these notes rest, and all moneys paid by Walker, and so applied by the bank, in any such part of their transactions, should, in stating this account, be credited to Walker, with the same effect as if no such usurious agreements had been made, and treating such moneys as not

allowed by the parties or included in the several statements of account rendered to Walker. Such accounts ought to be taken as *correct, on the basis* on which the business is shown to have been transacted and the accounts kept, (except in so far as shown specifically to have been made in error). If it be shown that at a given stage of this business the bank was regularly charging Walker with a given rate of interest in excess of that permitted by law, it should be taken as tending to prove that the accounts were kept and stated upon that basis, and, that while they are to be taken to have been correctly kept on that basis, and correctly stated, still, such false results, if any, as necessarily arose from the unlawful basis, if shown, should be disregarded by the master, and the account should be stated upon the true basis, upon the facts to be derived from proofs and from the books and the statements of account made from time to time, (viewing them as accurately kept and accurately made on the basis upon which the business may be shown to have been done), and such statements of account rendered from time to time, if shown to be upon the supposed unlawful basis, should be corrected and modified in this regard, without requiring specific proof of the details of each transaction in which such correction or modification is to be made. It may not be necessary, to reach the proper result, that these accounts be opened generally as to *all* of their items, or that the entire details of the account be stated anew. It may be sufficient, and a more convenient mode of reaching true results, to adopt the statements as *prima facie* correct, modifying the same only so far as the proofs show that the same ought to be modified.

If it should turn out that, stating the account upon its true basis, Walker has, as he claims in fact, fully paid the whole of his indebtedness, with lawful interest to the bank, the principal notes should be cancelled and the collaterals surrendered. If any portion of his debt remains unpaid, a decree should go against the collaterals for that amount.

It may be well to say something about the charges in some
of these accounts, consisting of notes marked paid and can-
celled, with debit tickets thereto attached. In an account
presented for the first time, such items seem to us not to be
allowable in the absence of vouchers or explanatory proof.
But, when found in accounts rendered from time to time, and
left for so long a time unquestioned and unchallenged, they
ought to stand, in the absence of proof that they are wrong.

Walker, however, testifies against the justice of these
items, while Lowenthal's testimony is in their support. It
would seem that if these notes were in fact paid by Walker,
the amount would appear in the books of the bank,—and if,
as contended by Walker, he paid any one of these notes, by
checks on other banks, or in cash, or by checks on this bank,
which were charged to him in his deposit account, and he
was again debited with the amount of such note by a debit
ticket, without withdrawing any money on account of such
debit, it would seem the books of the bank would not bal-
ance. If it were clearly shown that any of the books of the
bank would furnish explanation of the source of such debits,
such entries ought to be produced.

It is contended that the several settlement-checks, as they
are called, and the releases signed by Walker, should uncon-
ditionally close the door against the investigation of the mat-
ter of usurious payments. This will not do. Adopt that
rule and every usurious transaction could readily be covered
from the scrutiny of the courts, and the statute on this
subject would be a dead letter. Courts of Chancery must
look through all such devices, and must be guided by the
real truth when ascertained.

The notes in question, and the matters on which they rest
for consideration, are open to investigation. The matter of
the amount of interest paid upon, or reserved from the prin-
cipal notes in this case, or paid or reserved in any transac-
tions growing out of these notes, or from which these notes
sprang, either in whole or in part, and the matter of interest

paid or reserved in any part of the transactions between Walker and the bank, constituting a continuous and connected course of business, of which these principal notes constitute a part, is a proper subject of inquiry. Where a note or debt of any kind (on which unlawful interest had been paid or reserved) was paid, in whole or in part, by the discount of a new note, and by the application thereto of the proceeds (or a part of proceeds of the new note) made through the form of a check drawn by the debtor upon the fund provided in whole or in part by the discount of the new note, this would, in substance, be a renewal of the old note or debt in another form, and, in such case, the matter of the amount of interest paid in any part of such transaction, is open to investigation.

Of course, where a debt or note was created or made by Walker to the bank, *not connected* with the principal notes in this case, by the general course of their dealings, or otherwise, and such independent debt was paid off by Walker without passing any part thereof into the consideration of the principal notes, directly or through some intervening transaction, in such case no inquiry can properly be made into the amount of interest paid or reserved in such transaction, although it may have been part of their continuous dealings, for Walker can not be allowed, in such case, to recover back, by credit or otherwise, interest thus voluntarily paid, (although in excess of the rate allowed by law), which has in no way enlarged the amount of the notes in controversy.

But (as we said in *Jenkins* v. *Greenbaum et al. supra*) if "these notes are the result of renewals from time to time, of sums on which usury had been paid, or in which it was included, then such usury above six per cent would be a proper credit. If, at any time, settlements were had and new notes were given in which there was included no usury, or on which none had been paid, the master could not go behind the settlement," in absence of proof of fraud, or specific error, or mistake. But, as long as any portion of the debt on which usury has been paid

or reserved remains, in its excess over six per cent it should be deducted as a credit.

The judgment of the Appellate Court in this case must be reversed, and the cause remanded, that an account may be stated in conformity with this opinion.

*Judgment reversed.*

Subsequently, on an application for a rehearing, the following additional opinion was filed:

Per CURIAM: We have examined carefully the suggestions made in the petition by defendants in error for a rehearing, and find no sufficient cause for allowing the same. We have modified the language of the opinion in some respects, in an endeavor to prevent a misapprehension of our views. We can not sanction the position of counsel, that the circuit court found, as a fact, that no usurious payments were made upon the notes in controversy or upon any transaction so connected with the same as to constitute any part of the consideration of, or foundation of, the same.

The record is very voluminous, and we do not deem it our duty, in the present condition of the same, to wade through it, and determine in this court the ultimate facts, and are not to be understood as doing so. This is the province of the circuit court, and the regular and appropriate mode of doing so is to refer the controverted question of fact to a master for his investigation and report on each. This affords an opportunity for either party to except to his findings respectively, and on the rulings upon such exceptions specific questions can be presented.

What we *decide* is, that it was error in the circuit court to ignore all questions relating to the allegations of payments of usurious interest. Had the circuit court found that usurious payments had not been made, we might examine the proofs as to such finding. In the absence of such finding, the master should have been directed to ascertain and report the facts in that regard.

The discussion of other questions, found in the opinion, are mere suggestions of the rules which may be applicable upon certain hypotheses presented or insisted upon by counsel in the briefs. These suggestions may be rather premature, and might, with eminent propriety, have been withheld until the facts were properly brought before us. In such case, we have but one hypothesis to apply the law to. We are asked to make these suggestions more unequivocal, so as to include or exclude certain hypotheses suggested by the petitioner. We forbear to do so until the actual facts of the case are definitely shown, either in a report of the master or in specific findings by the court.

*Rehearing denied.*

Mr. JUSTICE CRAIG, dissenting:

I do not concur with a majority of the court in the original opinion delivered in this case, or in the Per Curiam prepared by the Chief Justice in overruling the petition for a rehearing. I understand it to be a well settled principle of equity, that a court of chancery may, before the cause is referred to the master, determine, by interlocutory decree, the rights of the parties, as established by the evidence, and determine the rule by which the master shall be governed in stating the account. *Field* v. *Holland,* 6 Cranch, 20; *Remson Remson,* 2 Johns. Ch. 500; *Moss* v. *McCall,* 75 Ill. 196; *Mosier* v. *Norton,* 83 id. 525.

This, when the action of the circuit court is examined and properly understood, will be found to be the course that was pursued with the case. The court may, it is true, refer a cause to the master without directions in regard to stating the account, but, in my judgment, the other is the better practice, and well sustained by authority. If, then, the court did not err in making the order of reference which was entered in the cause, if the plaintiff in error desired to present the question whether the conclusion reached by the court from the evidence was in fact correct or incorrect, the law required him

to appear before the master and file objections, and if they were overruled by the master, when the report was presented to the court, to appear and file exceptions. Upon the hearing of the exceptions, all the evidence bearing upon the point presented by the exceptions could be brought in review before the court and a decision had. When this course is pursued, and an appeal or writ of error prosecuted from the decision of the circuit court, the decision of the court can be reviewed. But when no objections are made before the master, and no exceptions filed in the circuit court to the report, the master's report must be taken as correct, and all objections regarded as waived. *Reigard* v. *McNiel,* 38 Ill. 400; *Pennell* v. *Lamar Ins. Co.* 73 id. 306; *Hurd* v. *Goodrich,* 59 id. 455.

No reason occurs to me why the decree should be reversed with directions to the circuit court to refer the cause to the master to state an account. That has already been done, and if the account was not stated as favorable to plaintiff in error as it should have been, he is in no position to complain. He failed to make objection at the time and place the law required him to object, and on account of such failure all objections to the master's report have been waived and can not be considered here.

Mr. JUSTICE SCOTT: I do not concur in the opinion of the majority of the court.