## Augusta F. Bensley v. Charles S. Bartholf.

### Gen. No. 13,522.

1. ` MORTGAGE—*what defenses available against assignee of.* An assignee of a mortgage takes it subject to all the infirmities to which it is liable in the hands of the assignor.

2. MORTGAGE—*when payments upon, made to assignor after assignment, may be shown as against assignee.* Where the assignee of a mortgage has failed to notify the mortgagor of the acquisition of the mortgage, such mortgagor is entitled, in the absence of knowledge .of the transfer of the security, to show, as against the assignee, all payments made upon the mortgage, after the assignment, to the mortgagee.

3. FORECLOSURE—*when improperly brought.* A foreclosure proceeding cannot be maintained where nothing more was due under the mortgage sought to be foreclosed than an amount of interest thereon, which amount of interest had been duly tendered and refused.

Foreclosure. Appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Reversed and remanded with directions. Opinion filed December 6, 1907.

**Statement by the Court.** December 5, 1905, appellee purchased from Henry W. Howe, for $2,000, appellant's note for $3,000, dated November 15, 1905, payable January 1, 1907, with interest at six per cent. per annum, payable January 1 and July 1 of each year. The principal and interest notes were secured by a trust deed from appellant to the Chicago Title & Trust Company as trustee. The trust deed was recorded November 24, 1905.

The notes and trust deed were made by appellant and delivered by her to Howe, her real estate agent, as collateral security for an anticipated indebtedness. There was at the time a first mortgage of $30,000 on the property in question, with another property of appellant, which had matured, and Howe undertook to either negotiate a new loan for $30,000 for five years at five per cent. on the property or arrange with the insurance company which held the mortgage for an

extension thereof. If he was successful he was to receive a commission of $750. Howe also agreed to pay the interest which was then due on the $30,000 loan and also to pay the taxes on the property, then overdue, amounting approximately to $1,500.

To secure Howe for these prospective advancements and his anticipated commissions, appellant delivered to him the $3,000 note and trust deed, and also assigned to him the rents coming due from the tenants upon the property for a period of two years, or longer if necessary. Howe was to collect these rents, retaining a commission of three per cent. on the gross amount collected, and out of the proceeds he was to reimburse himself for his advancements and for his commissions of $200 on the $3,000 note, and for $750, his commissions for negotiating or renewing the $30,000 mortgage. If not successful in negotiating the $30,000, the $3,000 note and trust deed were to represent only the amount due on the same, not including the commission of $750, and the interest thereon was to be paid out of the rents collected. If any repairs were necessary, or any expenditures were made by him for subsequent taxes, he was to reimburse himself for the same out of the rents collected.

This agreement between appellant and Howe is expressed in and evidenced by a letter, from Howe to appellant dated November 25, 1905.

Howe failed to negotiate a new $30,000 loan, or to procure an extension of the existing loan. He made no repairs on the property, nor did he pay any subsequently accruing taxes. Two days after appellant delivered to him the $3,000 note and trust deed, he paid the accrued interest on the $30,000 loan to the counsel for the Massachusetts Mutual Life Insurance Company, amounting to $734; and on December 1, 1905, he paid the taxes then in default, amounting to $830.67. His books also show a payment on December 1, 1905, to counsel for the insurance company of $7, and on December 4, 1905, a payment of eighty cents interest,

making the total of his disbursements up to December 5, 1905, when he sold the note and trust deed to appellee, $1,572.47.

No notice of the assignment of the $3,000 note and trust deed to appellee was given to appellant until after February 1, 1906; nor were there any circumstances to put her on inquiry. On that date Howe committed suicide. The next day, February 2, 1906, appellee wrote a letter to appellant notifying her that he held her note and trust deed for $3,000 and requested payment of the interest coupon due January 1, 1906. This was the first knowledge she had of the transfer.

Before Howe assigned the note and trust deed to appellee, he had collected rents amounting to $130, and after the assignment and up to the date of his death he collected rents from appellant's tenants amounting to $710.

When appellant received the letter of February 2, 1906, she made efforts to discover the facts regarding the assignment of the note to appellee, and from outside sources, appellee refusing to give her the information, learned that appellee had paid $2,000 for the note and trust deed. Efforts were made by appellant to effect a settlement with appellee, but without success. Appellee refused to accept interest from appellant on a less sum than $3,000.

On May 23, 1906, appellant made a legal tender of interest on $2,000 to appellee, which was declined, appellee stating that he would accept interest on no less a sum than $3,000.

On August 27, 1906, appellee declared the whole indebtedness due and filed the bill in this case to foreclose the lien of the trust deed. A receiver was appointed by the Circuit Court on the filing of the bill.

Appellant answered the bill and the cause was referred to a master in chancery to take proofs and report. The master reported that appellee was entitled to a decree of foreclosure for the amount due on the note of his assignor, Howe, at the date of the

assignment thereof to appellee, and found the amount to be $1,663.92. To this was added $109.23 for interest, $5 for judgment search, and $100 for solicitors' fees, making a total of $1,878.15, and a decree for that amount was entered by the court after overruling all objections filed to the report by appellant. From this decree appellant prosecutes this appeal.

THOMAS G. VENT, for appellant.

DONALD L. MORRILL, for appellee.

MR. JUSTICE SMITH delivered the opinion of the court.

This is not a suit at law on a negotiable instrument. It is a proceeding in equity to foreclose a mortgage— a non-negotiable instrument—and the rights of the parties are controlled by equitable principles. In accordance with these principles, it has been held uniformly in this state that: "He who buys that which is not assignable at law, relying upon a court of chancery to protect and enforce his rights, takes it subject to all infirmities to which it is liable in the hands of the assignor; and the reason is, that equity will not lend itself to deprive a party of a right which the law has secured him, if such right is intrinsically just of itself." Olds v. Cummings, 31 Ill. 191; Chicago Title & Trust Company v. Aff, 183 *id.* 91; Buehler v. McCormick, 169 *id.* 269; Martina v. Muhlke, 186 *id.* 327; Sumner v. Waugh, 56 *id.* 531.

The record shows that at the time appellee took the note and trust deed described in the bill of complaint, they represented an indebtedness from appellant to Howe not exceeding $1,646.37. This amount allows to Howe the $200 commission mentioned in his letter to appellant dated November 25, 1905. It is exceedingly doubtful whether or not, under the agreement as expressed in the letter, he was equitably entitled to this commission of $200 at that time, but in our view of the case it is not necessary for us to determine that question. Assuming that this commission should be

allowed to Howe, the extent of appellant's indebtedness to Howe on December 5, 1905, when appellee took the obligation secured by the mortgage, was the above mentioned amount. As between appellant and Howe there was, at that time, on the evidence in the record, no greater equitable claim against appellant under the note and trust deed.

In order to protect his rights against a payment by appellant to Howe, appellee was bound to give appellant notice, actual or constructive, of the assignment of the note and trust deed to him; for, as said in McAuliff, Admr., et al. v. Reuter, 166 Ill. 491, at page 499: "An assignment of a chose in action other than a negotiable instrument is not perfect so as to protect the assignee as against equities between the original parties, without notice of the assignment to the debtor. This is the general rule, and, unless mortgages and deeds of trust are to be treated as exceptions, the rule must be applied to them."

By the terms of the agreement between appellant and Howe (as stated in Howe's letter above referred to), Howe acknowledges the receipt of a letter addressed to the several tenants occupying the premises, saying "the same being an assignment of the rents. * * * We agree to collect the rents, credit your account for the same. * * * It is understood the amount of rents collected from time to time is to be used to pay for repairs, taxes, interest and the reduction of the $3,000 loan first, and thereafter on the $30,000 loan, until the same is reduced to $27,000 gross. Our commission for such collections is to be 3% on the gross amount."

The evidence shows that no repairs became necessary or were made, and no subsequent taxes accrued for Howe to pay; that between the date of the assignment and February 2, 1906, the date appellee gave notice of the assignment to appellant, Howe collected rents due from appellant's tenants aggregating $710, which, under the agreement between appellant and

Howe, should be applied in payment of interest on the note and mortgage held by appellee, and in reduction of the principal indebtedness secured thereby. Under the above authorities and Towner et al. v. McClelland, 110 Ill. 542, Nopieralski et al. v. Simon, 198 *id.* 384, and cases there cited, we are of the opinion that the rents so collected by Howe before appellee gave notice of the assignment to appellant, must in equity be applied in payment *pro tanto* of the indebtedness secured by the note and trust deed, less the commission thereon of $3.90, thus reducing it by the amount of $706.10, for the obvious reason that if appellee had given appellant notice of the assignment when it was made, appellant could have protected herself from the fraud of Howe in collecting the rents and not applying them on the note. By keeping silent and permitting appellant to believe that Howe was still the owner of her note and trust deed, appellee enabled Howe to continue collecting the rents and to apply them to his own use, in violation of his agreement with appellant.

Under the agreement between appellant and Howe, the interest due on January 1, 1906, and July 1, 1906, should have been paid by Howe out of the rents collected, before the balance of the money collected by him was applied in reduction of the principal indebtedness. The money collected must be so applied. It follows from such application of the money that appellant was not in default in the payments of interest when the bill in this case was filed.

The inequity of appellee's case, however, appears still more clearly and conclusively in his refusal to accept interest on any sum less than $3,000, an amount which he was not entitled to receive, as shown by the record. In his testimony on the hearing before the master, in reply to the question: "Q. Did you state your reasons for declining to receive the sums tendered?" he answered: "A. Yes, sir. The first mortgage is due, the interest has not been paid and I must

keep myself in a position where I can declare the whole amount due. Even if he had tendered the interest on $3,000, I would not have accepted it." This was appellee's position and attitude during all the negotiations which commenced shortly after the writing of his letter to appellant of February 2, 1906, down to the time of the filing of the bill; and it was maintained even on the hearing of the case.

The record shows that on receipt of the letter just mentioned, appellant, through her son, John R. Bensley, at once endeavored to ascertain the amount actually paid for the note and trust deed by appellee, and obtained information from outside sources that the amount was $2,000. This was the amount loaned by appellee on the securities and was admitted by appellee to be the amount in his cross-examination on the hearing before the master. But when appellant's son, who was acting for her, applied to appellee for confirmation of the information which he had received on this point, appellee refused to confirm it, or to disclose the amount loaned by him. The offer was then made on behalf of appellant to appellee to pay the interest on $2,000, but he declined to accept it, saying there were some legal reasons why he did not accept it.

During the spring of 1906 negotiations were had between appellant and the insurance company which held the first mortgage on her property, and the holder of a second mortgage on two lots, and appellee as the holder of the second mortgage in question, looking to an arrangement whereby the property could be managed for the exclusive benefit of said encumbrances, and thus the indebtedness be paid down to a point at which a new loan could be negotiated and the existing encumbrances retired. The proposed arrangement fixed the indebtedness held by appellee at $2,000. Appellee at first approved the plan. But when the papers were prepared and presented to him for his signature, he refused to enter into the agreement. On the same day, May 11, 1906, he wrote a letter to appellant's

Bensley v. Bartholf.

solicitor, in which he said, speaking of the proposed contract: "Under the terms of it my interest is to be paid, and if this is done I can't possibly bring fore-closure proceedings until the principal note is due."

On the same day, appellant's counsel wrote appellee, enclosing a check for interest due on $2,000. The check was returned by appellee in a letter dated May 21, 1906. Appellant's counsel, with John R. Bensley, then called on appellee and made him a legal tender of interest due on $2,000, and appellee refused to accept it, stating he would accept no interest on any-thing less than $3,000. This is denied by appellee, but the preponderance of the evidence is decidedly against him.

We have thus referred to the evidence as to appel-lee's attitude sufficiently to indicate that appellee did not wish to admit that he was not a creditor to the extent of $3,000, and that he refused, before the bill was filed, to accept the interest due him for the pur-pose, as stated by him in his cross-examination, to keep himself in a position where he could declare the whole amount due.

In our opinion, appellant did all that she was re-quired to do under the law in the matter of the pay-ment of interest. Gorham v. Farson, 119 Ill. 442; Ven-tres v. Cobb, 105 *id.* 42; Webster v. French, 11 *id.* 278. She could do nothing more than tender the interest due. This she did, and having made the tender, she was required to do nothing more until a court of equity should order it to be brought into court. Webster v. French, *supra.* Appellee had no right, under the evi-dence, to declare a default and the whole indebtedness due and file this bill to foreclose. He has no standing in equity upon the record before us.

The decree of the Circuit Court is reversed and the cause is remanded, with directions to dismiss the bill at complainant's — appellee's — costs, for want of equity.

*Reversed and remanded, with directions.*