AMELIA HIRSH *et al.* Appellees, *vs.* EDWIN H. ARNOLD *et al.* Appellants.

*Opinion filed June 18, 1925—Petitions stricken October 7, 1925.*

1. MORTGAGES—*when cestui que trust is a proper but not a necessary party to foreclosure.* Where a trustee of a fraternal order is entrusted with exclusive control and management of the funds of the society for the purpose of lending them on interest and to make loans of such funds in his own name, the society is a proper but not a necessary party to foreclose a mortgage by which such a loan is secured, and the filing of an amended bill to make the society a party complainant does not constitute filing a new suit.

2. SAME—*when a mortgagee in possession is not a trespasser.* Where, in a suit to foreclose a trust deed, a receiver is appointed to manage and collect the rents in accordance with the provisions of the deed, and the receiver in his absence appoints an agent, who mismanages the property and fails to account for rents, the mortgagee, in taking possession, collecting the rents and making necessary improvements with the consent of the receiver, does not become a trespasser.

3. SAME—*mortgagee in possession must make necessary repairs, only.* A mortgagee in possession is only bound to keep the estate in necessary repair and preserve it, and he is not authorized to make new improvements and pay the cost from the amount due on the mortgage, or pay it out of the rents and profits, except under very extraordinary circumstances.

4. SAME—*when equity may restrain suits at law against complainants in possession.* A court of equity having taken jurisdiction of a foreclosure suit, may, on petition of the complainant's executors, who are in possession, restrain suits in trespass against them, where the defendants to the foreclosure suit have filed a

cross-bill setting up the same allegations of damages as are alleged in their suits at law.

5. SAME—*when it is error to dismiss a foreclosure suit as to the executors of complainant.* It is error to dismiss a foreclosure suit as to the executors of the complainant after the filing of an amended bill making a fraternal order complainant, whose funds constituted the loan which the mortgage secured, where the executors have filed a petition in the suit to restrain suits in trespass filed against them by the defendants, as they are necessary parties to a decree restraining the suits against them.

6. SAME—*finding in decree as to usury may be reviewed on assignment of cross-errors.* Where the mortgagors have prosecuted an appeal to review a foreclosure decree, a finding in the decree that the notes secured by the trust deed were usurious may be reviewed upon assignment of cross-error by the appellees although they made no objection to the report of the master on that question, the complaint being against the action of the court in directing the master to make an accounting on the basis that the notes were usurious.

7. SAME—*defense of usury is available against an innocent purchaser.* As a purchaser of a mortgage or trust deed takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and since in equity the mortgagor is entitled to every defense against the assignee which he could have made against the original mortgagee, the defense of usury in a foreclosure suit is just as effectual against an innocent purchaser without notice before maturity as it is against the original mortgagee.

8. EQUITY—*defense of laches must be set up by demurrer or plea.* Objections to a bill in equity on the ground of *laches* can only be made by demurrer or plea setting up *laches* as a defense.

9. SAME—*filing of plea after proofs are in rests in discretion of court.* The filing of a plea to an amended bill after the proofs are all in rests in the discretion of the court.

APPEAL from the Superior Court of Cook county; the Hon. CHARLES M. FOELL, Judge, presiding.

OTTO BAER, (ALANSON C. NOBLE, of counsel,) for appellants.

SIGMUND W. DAVID, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On July 12, 1901, Morris M. Hirsh filed his bill in the superior court of Cook county against Edwin H. Arnold and wife, Emma Arnold, Alanson C. Noble, a bachelor, Martha L. Noble, a widow, Edward S. Dreyer, trustee, Robert Berger, successor in trust, the Security Title and Trust Company, receiver for E. S. Dreyer & Co., and others, to foreclose a trust deed to certain real estate known as 8681-8683 Vincennes road, Chicago, given to secure a principal note for $5000 and six coupon or interest notes for $175 each, executed by Edwin H. Arnold, Emma Arnold, Alanson C. Noble and Martha L. Noble, dated July 22, 1891, the principal note being due three years after date, payable to the order of Adolph Nissen and by him endorsed without recourse. The defendants having failed to pay the principal note when due, the time for the payment thereof was extended for five years by written agreement and ten other coupon or interest notes for $175 each were executed. A receiver was appointed in accordance with the provisions of the deed to collect the rents pending the foreclosure proceeding. In November, 1904, Edwin H. and Emma Arnold and Alanson C. Noble filed their sworn answer admitting the execution of notes and a trust deed of similar description but denying that they had signed the notes and trust deed set out in the bill. They denied that the complainant was the owner of the notes and trust deed and alleged that they were tainted with usury. The issues formed on the answer were referred to a master in chancery in November, 1904, which reference was afterwards set aside. In January, 1912, the cause was referred to master in chancery Holland, and in August, 1912, that reference was set aside and the issues were referred to master in chancery O'Donnell, who began taking the testimony in November, 1912, and concluded the same in July, 1918.

On April 10, 1913, the Arnolds and Alanson C. Noble filed their cross-bill against complainant, Morris M. Hirsh,

and Sidney Mandel, alleging that District Grand Lodge No. 6, Independent Order of B'nai B'rith, (hereinafter referred to as the lodge,) was the owner of the notes and that Hirsh was not the owner thereof; that Hirsh therefore illegally had the receiver appointed and that the receiver had illegally entered into the possession of the property; that Hirsh had usurped the possession of the receiver, had committed trespass and waste and was guilty of mismanagement of the property. The cross-bill asked that a decree be entered against Hirsh for the rental value of the property, which under proper management would have produced $150 per month, and for damages for waste and trespass. The cross-bill also prayed to have a certain tax deed and a quit-claim deed to Mandel removed as clouds upon the title. The answer of Mandel and Hirsh admitted that the tax deed issued to Jacob Glos in 1908 and the quit-claim deed later made by Glos to Mandel were for the benefit of and were acquired with the money advanced by Hirsh.

In May, 1917, Hirsh moved to amend the original bill by making the lodge a party complainant. The court referred this motion to the master for consideration. On April 21, 1919, the master in substance found from all the evidence which had been taken and concluded, that Hirsh and the lodge were both proper parties complainant in the cause, the former as the legal owner of the notes and the latter as the beneficial or equitable owner; that if both were made parties complainant they would be entitled to a decree of foreclosure under the evidence taken. He further found that there were five coupon notes given since the extension of the loan which had not been paid and that no interest had been paid on the principal note since July 22, 1897, and that the notes were not tainted with usury. On January 15, 1920, the court granted leave to Hirsh to file the amended bill making the lodge a party complainant and containing proper allegations conforming to the proofs; that the same be filed without prejudice to any of the rights

of the defendants under their cross-bill; that the answer of the defendants to the original bill stand as their answer to the amended bill and that the cross-bill stand as such bill to the amended bill, and referred the cause back to the master to make specific recommendations as to the disposition to be made of the cross-bill on the proofs already taken. The court allowed the bill to be amended on the terms that the $1850.70 of master's and stenographer's fees paid by Hirsh stand as complainants' part of such costs and that the $300 of such costs paid by the defendants stand as their part of such costs, and that the remaining costs unpaid abide the final determination of the suit, the court reserving the right to re-tax the defendants' costs on final hearing. On February 18, 1920, the master found in his supplemental report, as to the cross-bill, that the cross-complainants could not hold Hirsh responsible for waste, mismanagement and alleged damage to the property, and that the allegations of the cross-bill averring trespass, waste and mismanagement could not be sustained. He further found that the cross-bill should be retained for the purpose of rendering an accounting as to the tax deed mentioned in the cross-bill. In May, 1920, the death of Hirsh was suggested on the record, and Amelia Hirsh and William A. Hirsh, executors of his last will and testament, were substituted as parties complainant.

On June 30, 1920, on a further hearing of the master's report the court entered an order that the lodge was entitled to a foreclosure of the trust deed and notes under the amended bill; that the notes and trust deed were tainted with usury and that an accounting be taken thereon on that basis; that the cross-complainants are entitled to an accounting for the rents, issues and profits of the premises; that the tax deed to Jacob Glos and the quit-claim deed from Glos to Mandel are clouds upon the title of the defendants; that Amelia and William A. Hirsh should make an accounting as to the expenses paid out for necessary re-

pairs, alterations and up-keep and all other items for which they claim credit, not including any sums for penalties or forfeitures, in addition to taxes or special assessments, paid by them since the beginning of the suit, and that the same shall not include interest on any such payments, and that after making a full accounting the master report the balance due. The master filed his report on May 26, 1922, stating that there was actually paid by the tenants or occupants of the building to the receiver, and to Hirsh, the original complainant, exclusive of the amount collected by one Neal while he was acting as agent for the receiver, $3385.75; that there were no tenants or occupants of the building who at any time failed to pay rent, as claimed by the defendants; that there was paid out by Hirsh on his behalf and for the lodge, for taxes, special assessments, repairs and alterations, $5809.48; that the defendants are entitled to a credit of $2571, the amount paid on the notes; that the complainants are entitled to a further charge of a solicitor's fee of $1500 under the provisions of the trust deed and under the evidence, and that the amount due complainants, and for which they should have a decree, is the sum of $6352.73. On December 16, 1922, the court approved the master's report, which came before the court on objections and exceptions, after deducting $335.54 for certain disbursements and expenses allowed by the master to complainants, and allowing to the defendants a further credit of $125 paid by them for the extension of the time for the payment of the principal note, and also a further credit of $860 which the court charged the complainants for certain rents that were not collected by the receiver or by Hirsh and which the court held they were chargeable with, leaving a balance due complainants of $5032.19. The court then entered an order dismissing the cross-bill for want of equity, and the amended bill of complainants as to the two executors of Hirsh for want of equity, and entered the usual decree in foreclosure and order of sale of the prem-

ises in default of the payment of the amount found due by the defendants, or some of them, within ten days from the date of the decree, with five per cent interest. The Arnolds and Alanson C. Noble have prosecuted this appeal for a review of the decree.

The first three errors assigned and argued by appellants are: (1) Morris M. Hirsh not being the owner of the notes sued on, the appointment of the receiver was wrongful and Hirsh became liable for all that the premises could be made to produce, and, whether the receiver was rightfully or wrongfully appointed, Hirsh went into possession and became liable regardless of the appointment; (2) the amended bill of complaint ought not to have been permitted to be filed; and (3) relief should have been granted as prayed by the cross-bill. The facts in the record are a complete answer to these contentions of appellants. Hirsh was the legal owner of this paper and the lodge was the beneficial or equitable owner. Hirsh was chairman of the board of trustees of the Grand Lodge, and as such officer he for many years had the custody and care of the lodge's money, which he was authorized to loan on any security that he saw fit. The money of the lodge was deposited in his private bank account, which was well known and acquiesced in by the lodge. He kept an account of all the funds received from the lodge and placed in his hands for loan purposes, but he dealt with the money as his own and kept it in his private account. He guaranteed the lodge against any loss on account of investments made by him, and he often made loans for the lodge and credited to it when at the time of such loans he did not have sufficient funds of the lodge in his hands to cover the loans. All that the lodge asked him to account for was the amount of money received by him for it and the interest he had realized thereon, or should realize in case the loans were good loans. This particular loan was made through Dreyer & Co., bankers, who pending these foreclosure proceedings

became bankrupt. Appellants had informed Dreyer & Co. that they desired a $5000 loan for the purpose of building or completing the building on the premises. Hirsh was told by the bankers about appellants desiring the loan, and after investigating the matter he concluded that he would make it, and the rate of interest charged on the loan was seven per cent. Hirsh drew his check for $5000 on his private account in the bank and took the notes endorsed by Nissen. The bankers then paid the money to appellants after deducting their two and one-half per cent commission. This loan was taken by Hirsh as one of the loans for the lodge. The trust deed provides that upon default in payment of any part of the indebtedness, the legal holder, in his own name or otherwise, may file a bill to obtain a decree for the sale of the whole or any part of the premises, and the court may then appoint a receiver to collect the rents during the pendency of the suit. The bill in this case was properly filed in the name of Hirsh. The funds of the lodge were entrusted to him with exclusive control and management for the purpose of lending on interest. He was not a mere nominal or naked trustee but a trustee of an express trust, with active duties imposed upon him, and the purpose of this suit was to reduce the money loaned to possession. He had a right to do this as a necessary power in the proper and continued execution of his agency, which was a strictly fiduciary one. The lodge, the *cestui que trust,* was a proper party but not a necessary party to the suit. *Dawson* v. *Burrus,* 73 Ala. 111; *Close* v. *Hodges,* 44 Minn. 204.

Hirsh was in no sense a trespasser. The receiver was rightfully appointed. The defendants were not able to pay the loan and did not pay even the interest thereon. The rentals from the premises did not pay the interest and taxes because the building had become undesirable to tenants for the purpose for which it was built,—a hotel. The premises

were very much out of repair, and Hirsh was compelled to expend as much as $500 on them in order to realize as much as $40 rent per month. Two things must exist before Hirsh or the receiver can be considered a trespasser: (1) The appointment of the receiver must be wrongful; and (2) the appointment must be judicially declared void. (High on Receivers,—4th ed.—p. 57.) The defendants never questioned the right to have the receiver appointed until the cross-bill was filed, about twelve years after the suit had been begun and after Hirsh began actively taking testimony to secure his decree, the delay being merely indulgence on the part of Hirsh in the apparent hope that the defendants might be able to pay the indebtedness, as had been represented to him they might be able to do. The receiver left the State and appointed one Neal as his agent to look after the premises and to collect the rents in his absence. Neal collected rents for a time and made some expenditures upon the building. He failed to turn over the rents in his hands, and Hirsh and his attorneys took the matter of the collection of further rents out of his hands and had two other parties act as agents of the receiver in the collection, and all the rents they collected were fully accounted for in the accounting before the master. These latter facts are the grounds upon which appellants base their claim that Hirsh usurped the possession of the receiver and became a trespasser, etc. Hirsh's action in this regard was with the consent of the receiver. Hirsh's attorneys did everything they could do to collect the rents from Neal, and even instituted suit against him. Appellant Noble, acting as the adviser and counselor of Neal, resisted judgment against Neal for the rents he had misappropriated.

There is no merit whatever in appellants' claim, under the cross-bill, that Hirsh was liable as a trespasser, or for waste, etc., or that he was liable for $150 per month as rent for the premises under the evidence to the effect that if he had spent from $1500 to $2000 for improvements he might

have realized such sum for rents. Hirsh took possession of
the premises by his agents because of the fact that the re-
ceiver had left the State and had appointed Neal as his agent
to collect the rents of the premises and to make proper dis-
bursements in the absence of the receiver, and Neal was re-
fusing to pay over the rents collected by him, to apply on
the indebtedness and to make all needed expenditures for
taxes, special assessments, etc. Hirsh had the receiver, and
his agents on behalf of the receiver, to account for all the
moneys they had actually received from the tenants of the
premises and also for the money that they had expended on
the premises. The expenditures were all found to be proper
expenditures by both the master and the court except the
sum of $335.54, which the master allowed but for which
the court refused to allow the receiver and Hirsh credit.
This sum included a fee of $75 charged by the receiver
for his services, $100 for attorneys' fees, and two items
of $106.40 and $54.14 charged by Hirsh's agents for col-
lecting the rents on behalf of the receiver. It thus appears
that neither Hirsh nor the receiver was allowed any fees
whatever for the services of the attorneys and the services
of the receiver in collecting the rents and that the defend-
ants got credit for all the rents collected by them from the
tenants, and in addition thereto the court properly allowed
as a further credit the sum of $125 paid by the defendants
for the extension of the time for the payment of the prin-
cipal note on the ground that such agreement was an agree-
ment for usury. The court also gave the defendants a fur-
ther credit for the $860 which the master had refused to
allow. This sum of money was for rent that the tenants
had failed to pay to either Hirsh or the receiver or their
agents, being twelve months' rent due from the three ten-
ants, Scarf, Brock and Miller, at $40 per month, or $480,
and thirty-eight months' rent due from Miller at $10 per
month, or $380. The record therefore shows that the de-
fendants have had credit for the entire rents that were due

from the tenants of the premises whether collected or not collected by Hirsh or his agents or the receiver or his agents, and that no charge has been allowed against the defendants for the collection and application of such rents. The only rents that they have not been allowed any credit for were the rents collected by Neal as the agent of the receiver, and the evidence shows that the rents collected by him amounted to $1747.50 and that his proper disbursements out of the same were $567.43, leaving the net amount due from Neal for rents $1180.07. The claim of appellants that they were charged with expenditures or disbursements by Neal but were not given credit for his receipts is not sustained by the record, which simply shows that neither the receipts nor the expenditures of Neal were considered in the accounting. The $529.15 that the complainants and the receiver were allowed credit for was for proper expenditures made by Hirsh himself during Neal's agency.

As to the Neal account for rents, as already stated, he owed for rents collected by him the sum of $1180.07 after deducting his expenditures upon the premises, which were shown to be proper expenditures. The court refused to allow appellants a credit for the amount of rents due from Neal upon the ground that Noble, the principal owner of the premises, had acted as attorney for Neal in his defense against the receiver's suit for the collection of such rents. Without regard to the question whether or not the court was justified in denying appellants' credit for this amount on such ground, we do not think that the defendants have any grounds of complaint against the total amount found due from them by the court. Appellants defended this suit, in the first place, on the ground that the lodge was the owner of the notes and mortgage and that for that reason Hirsh had no right to maintain this suit in his name. In answer to this claim Hirsh finally obtained leave of court to amend the bill by making the lodge a party thereto. As we have already held, the lodge was a proper party but not

a necessary party. The making of the lodge a party to this bill did not necessitate any additional evidence or change in the proofs already in the record. The court properly allowed the amendment, but penalized Hirsh by requiring him to pay $1850.70 of the master's and stenographer's fees as the condition upon which he might make the lodge a party complainant to the bill and only charged $300 of such costs to the defendants. We do not think that this action of the court was warranted by the facts in the record, but we are not disposed to disturb either finding or ruling of the court, as appellants, in any view of the case, have no just complaint as to the total amount found due against them. There is no theory of the case by which Hirsh could be compelled to spend $1500 or $2000 in money in the making of new improvements on the chance that he might increase the rents to $125 or $150 a month. Even if he should be regarded as a mortgagee in possession, he was then only bound to lay out money to keep the estate in necessary repair and to preserve it, but was not authorized to make new improvements and tax the expense to the amount due on the mortgage, or pay it out of the rents and profits, except under very extraordinary circumstances. (*McConnel* v. *Holobush,* 11 Ill. 61.) Kent states the rule thus: "If the mortgagee obtains possession of the mortgaged premises before foreclosure he will be accountable for the actual receipts of the net rents and profits and nothing more, unless they were reduced or lost by his willful default or gross negligence. By taking possession he imposes upon himself the duty of a provident owner, and he is bound to recover what such an owner would with reasonable diligence have received." *Moshier* v. *Norton,* 100 Ill. 63.

The only relief that appellants were entitled to under the cross-bill was to have the tax deed obtained by Glos in 1908, and his subsequent quit-claim deed to Mandel, declared clouds and canceled, as in substance recommended by the master.

The claim of the appellants that the lodge was guilty of *laches* in being made a party complainant is without merit. Besides, objections to a bill in equity on the ground of *laches* can only be made by demurrer or plea setting up *laches* as a defense, which was not done in this case, and leave was not asked to make such a claim. *Elting* v. *First Nat. Bank,* 173 Ill. 368.

On June 19, 1921, the court very properly denied leave to appellants to file a plea to the amended bill which would in effect allege that the lodge had no interest in this litigation and that Hirsh was then the sole legal and equitable owner of the notes and trust deed. The proofs were all in, and allowing appellants to file such a plea was entirely in the court's discretion.

After the court entered its decree of June 30, 1920, Noble filed two suits against the executors of Hirsh and one against the executors and the lodge. One of these suits against the executors was a claim filed against the estate of Hirsh for $100,000, the second was a suit in trespass instituted in the superior court for a like amount, and the third was a suit in trespass in the circuit court for a like amount against Hirsh's executors and the lodge. These suits were for the purpose of recovering damages for the alleged trespasses, etc., set out in appellants' cross-bill in this suit. On October 31, 1921, the executors and the lodge filed a petition in this suit to restrain the suits at law. It is claimed by Noble that the court erred in restraining these suits for damages and use and occupation, as the order deprived him of his legal rights. All of these matters were being litigated and had been litigated and passed on by the court in this suit, and the court committed no error in restraining the suits at law.

The court properly allowed a solicitor's fee of $1500 against appellants in the foreclosure proceeding. It was stipulated by the parties to the suit before the amended bill was filed, that the above fee was reasonable and might be

allowed under the provisions of the trust deed. The filing of the amended bill was not a new suit but only added a party complainant, with additional averments in the bill showing the relations of Hirsh and the lodge. It was not really necessary to file the amended bill. The filing of it in no way relieved or excused appellants from their agreement in the trust deed to pay attorneys' fees. There is no merit whatever in the contention of appellants that they have been denied any substantial right or claim in this suit except the claim under their cross-bill that the court should have ordered canceled the tax deed issued to Glos and the quit-claim deed by him to Mandel. Complainants were allowed all the taxes, without penalties, costs or interest, that Glos paid in securing the tax deed, but the court erroneously failed to cancel the deed by its decree.

We think the court also erred in dismissing the bill as to the executors of Hirsh, and particularly for the reason that on the petition of the executors the suits at law against them were restrained. The executors should have been allowed to remain as parties to the suit, and there is no reason why they should have been dismissed out of the suit, so far as we are able to see. This error was not cured by the stipulation between the executors and the lodge recited in the decree. As the decree of the court stands, the executors have a decree restraining suits at law against them to which they are not parties, and they are left as nominal owners of all interest in the tax deed and quit-claim deed, which are not canceled, and appellants are charged with all the taxes, special assessments, etc., on which the tax deed is based.

Appellees contend on this appeal that the court should not have dismissed the bill as to the executors but should have entered a decree in their favor and the lodge, jointly. They further state that there is no dispute or controversy between them and the lodge. They also contend that the court committed error in its finding that there was usury

in the note and trust deed. They conclude by saying that if we hold that the court was right in its finding upon the issue of usury they have no objection to the affirmance of the decree. Appellants argue that appellees having failed to make any objections to the last report of the master, which held, under the direction of the court, that the notes were usurious, they are not entitled to have reviewed the question of usury. Appellees by their cross-error assigned are entitled to have this question passed upon. Their complaint is against the action of the court in directing the master to make the accounting on the basis that the notes were usurious. No objections to the master's report by appellees are necessary to their right of review of the court's decision as to usury. (*Bobe's Heirs* v. *Stickney,* 36 Ala. 482; *Jenkins* v. *International Bank,* 97 Ill. 568.) By this appeal appellants seek to review the entire decree of the court, and appellees are entitled to have reviewed any questions that they may desire to have reviewed by a proper assignment of cross-errors. *McCreery* v. *Burnsmier,* 293 Ill. 43.

The facts touching the question of usury appear to be the following: Hirsh bought the notes and mortgage or trust deed of Dreyer & Co., who were at that time mortgage bankers. The notes were assigned to Hirsh by Adolph Nissen, who was apparently an agent or employee of said bankers. Hirsh paid for the note and trust deed the sum of $5000, which was deposited in said bank, and the bankers paid the money to appellants after deducting two and a half per cent commission. Appellants knew nothing about Hirsh or the lodge having any interest in the note or that they furnished the money or purchased the note, until long after the note was executed. The original bill in this case alleges that the principal and interest notes were "transferred and sold" to Hirsh. It is alleged in the amended bill, filed after the proofs were all in, that the principal and interest notes were transferred and sold to Hirsh, as already stated. The court was warranted in its conclusion from

the evidence that the loan was made to appellants by Dreyer & Co. and that the notes were later sold and transferred to Hirsh; that the interest was usurious, as the bankers charged seven per cent interest in the notes, which the appellants agreed to pay, and in addition thereto two and a half per cent commission. The record does not disclose that Hirsh had notice of the fact that the notes were tainted with usury. Nevertheless, a purchaser of a mortgage or trust deed takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and in equity the mortgagor is entitled to every defense against the assignee which he could have made against the original mortgagee. (*Olds* v. *Cummings*, 31 Ill. 188; *Schultz* v. *Sroelowitz*, 191 id. 249; *Pittsburg Plate Glass Co.* v. *Kransz*, 291 id. 84.) The defense of usury in a foreclosure suit is just as effectual against an innocent purchaser before maturity as it is against the original mortgagee.

For the reasons indicated the decree of the superior court is reversed and the cause remanded, with directions to modify the decree by making it a joint decree in favor of both the executors and the lodge, and that the decree provide that the tax deed and quit-claim deed be canceled as clouds on the title, and that as modified the decree stand as the decree in this case as of the date it was originally entered.

Appellants secured the dismissal of the suit as to the executors, and contend on this appeal that no part of the decree should stand except that part dismissing the bill as to the executors for want of equity. They also contend, in substance, that if the decree should in other particulars stand as rendered it is erroneous in the omission of a provision canceling the tax and quit-claim deeds. It is our conclusion that appellants and appellees should each pay one-half of the costs of this appeal, and the clerk is directed to so tax the costs of the appeal.

*Reversed and remanded, with directions.*