**T. H. Kennell, Sr., Plaintiff in Error, v. Alva E. Herbert et al., Defendants in Error.**

**Gen. No. 7,975.**

Opinion filed May 21, 1929.

R. Waite Joslyn, for plaintiff in error.

William E. Perce and Robert L. Kemler, for defendants in error.

Mr. Justice Jett delivered the opinion of the court. ·This is a bill brought by T. H. Kennell, Sr., plaintiff in error, against Alva E. Herbert, Mattie Herbert, Sam T. Peterson, trustee, Mary Kruse and Clifford A. Thomas, defendants in error, to foreclose a certain trust deed, dated October 18, 1919, executed by Alva E. Herbert and Mattie Herbert, his wife, to secure four promissory notes of even date, aggregating the sum of $1,700, each due five years after date, and each payable to the order of themselves, and bearing interest at

6 per cent per annum, both principal and interest payable at the office of Charles Rippberger Company, at Elgin, Illinois. The bill is drawn in the usual form to foreclose a mortgage, alleging that there has been a default in the payment of both principal and interest. Exceptions were filed to the bill and plaintiff in error asked for and obtained leave, and filed an amendment to the bill of complaint by which he charges that on the 16th day of April, 1921, a certain sum of money was paid to the Charles Rippberger Company for the alleged purpose of liquidating the $1,700, in notes, held by the complainant; that the said money was received by and credited on the books of the Rippberger Company to Alva E. Herbert and wife; that thereafter Sam T. Peterson, trustee, executed and delivered to Walter Rippberger a release, purporting to release the trust deed in question; that the release deed was delivered by Rippberger to Mary Kruse.

The amendment to the bill also charges that the obtaining of the release deed was fraudulent and unauthorized by the plaintiff in error; that at the time of the execution and delivery of the release deed, the Rippberger Company was insolvent; that Peterson, as trustee, and Rippberger conspired together to secure said money by wrongfully and fraudulently giving the release deed, all of which was unknown to the complainant, and that the plaintiff in error has not received the principal due on said notes.

To the amended bill answers were filed by the defendants Alva E. Herbert and Mary Kruse, a hearing was had upon the amended bill and the answers thereto, and the chancellor dismissed the bill for want of equity. The plaintiff in error sued out this writ of error to have the action of the chancellor reviewed.

The record shows that on October 18, 1919, Alva E. Herbert and wife applied for a loan from Charles Rippberger Company, in the sum of $1,700, and exe-

cuted the notes described in the bill and trust deed, securing the same, which was recorded in the recorder's office of Kane county, October 24, 1919; that the Charles Rippberger Company was a copartnership consisting of Sam T. Peterson, the trustee named in said trust deed, Walter C. Rippberger and Sophia Rippberger; that they had been engaged for a number of years prior to the transaction in question in loaning money in the City of Elgin; that Alva E. Herbert and wife indorsed the notes in question in blank, and after receiving the $1,700 left the notes at the Rippberger office in the custody of Peterson, the trustee; that some time thereafter plaintiff in error purchased the notes from the trustee, and the name of the complainant was placed upon each of the notes as indorsee thereof, by either the plaintiff in error himself, or some one at the Rippberger office; that on the 3rd day of February, 1921, Alva E. Herbert and wife executed an agreement to sell the premises free and clear of incumbrances to William Kruse and Mary Kruse for the sum of $3,500; that $500 in cash was paid by Kruse and wife to Herbert, which Herbert paid to the trustee on February 4, 1921; that thereafter during the month of March, 1921, the abstract was delivered to Kruse, and he found the title subject to the trust deed securing said $1,700; that Herbert was notified that before the transaction could be completed he would be required to obtain a release deed from the trustee, releasing the trust deed in question, to the end that Herbert and wife would convey the property to Kruse free and clear of incumbrances in compliance with the terms of the written contract; that Herbert communicated with Peterson, the trustee, and Peterson advised that before he could execute the release deed he would either have to pay the principal of $1,700 and interest thereon, or execute other papers secured by the property of Herbert, known as the McClue avenue

property; that on the 16th day of April, 1921, Herbert executed his four promissory notes aggregating $2,000, secured by a trust deed on the McClue avenue property, to Peterson as trustee; that said $2,000 in notes were given to pay off the $1,700 in notes and interest, and the balance of his book account at the Rippberger Company office; that after the execution of said $2,000 in notes the said Peterson, as trustee, executed a release, dated April 19, 1921, duly acknowledged by him in the usual form, releasing the trust deed first hereinabove mentioned, and delivered the same to Herbert; a day or two thereafter Herbert delivered the release deed, together with warranty deed, executed by himself and wife to the said premises, free and clear of all incumbrance, to the said William Kruse and Mary Kruse; that thereupon William and Mary Kruse paid to the said Herbert the balance of the purchase price in full, being $3,500, less the said $500 that was paid at the time of entering into the contract, and less certain deductions relating to revenue stamps, insurance premiums, and recording charges.

The evidence further shows that the plaintiff in error authorized his son, T. H. Kennell, Jr., to transact any and all business with reference to the $1,700 in notes; that the plaintiff in error and his son, T. H. Kennell, Jr., were acquainted with Herbert and his wife, and saw them from time to time while the plaintiff in error held the $1,700 in notes; that the interest upon said notes was paid to plaintiff in error by the trustee, by a Rippberger check; that neither plaintiff in error nor his son ever advised Herbert or his wife that he had possession of or claimed to own the notes in question; neither Herbert nor his wife knew that the plaintiff in error held or claimed to have any interest in the notes, Herbert believing that the notes were held by Peterson, the trustee, at the Rippberger office, until December, 1925, after the trustee and his copart-

ners filed a petition in bankruptcy, when Kennell, for the first time, called upon Herbert and demanded payment of the notes in question.

It is further disclosed that the Rippberger Company filed a petition in bankruptcy in December, 1925; that a day or two after the filing of the petition, Kennell, Jr., acting for his father, called upon Herbert at his home, and advised him that he held the notes and wanted to know what was to be done with reference to the same; that Herbert advised him that he had paid the notes long since, and inquired of Kennell why he had never spoken to him about the matter before. The next day Kennell called upon Herbert personally, and Herbert again explained that he had paid the notes in full in 1921.

The evidence further shows that Kennell, Jr., on two or three occasions, called at the Rippberger office and consulted Peterson, the trustee, and Walter Rippberger, prior to the bankruptcy proceedings, demanding payment of the principal and interest; that the notes were past due, and finally Kennell told Rippberger that if they were not paid promptly, he would start legal proceedings to collect the same.

It is insisted by plaintiff in error that because the release deed, executed by Peterson, the trustee, was in fact executed and delivered to Herbert before the maturity of the notes in question, that William and Mary Kruse, who were the purchasers of the property from Herbert, were in duty bound to obtain the canceled notes, so executed to Herbert and wife, or at least to make inquiry if the notes had, in fact, been paid. In order to determine the questions involved in this proceeding, it is necessary to keep in mind that on October 18, 1919, Alva E. Herbert and Mattie Herbert executed and delivered four promissory notes, aggregating the sum of $1,700, payable to themselves, five years after date, with interest at 6 per cent per annum, prin-

cipal and interest payable at the office of Charles Ripp-berger Company, Elgin, Illinois; that said notes were indorsed on the back thereof, "Payable to the order of T. H. Kennell, Sr."; that Herbert and wife made their deed of trust to Peterson, trustee, conveying lots 3, 4, 5 and 6, in Block 2, of Illinois Park Addition to Elgin, Kane county, Illinois, in trust, for the payment of said four notes; that Herbert contracted to sell the property mentioned and described in the trust deed, free and clear of incumbrance, to William Kruse and Mary Kruse; 'that Herbert paid the notes in question by executing and delivering to Peterson, as trustee, $2,000 in notes, secured by trust deed upon what is known as the McClue avenue property; that after executing the notes and trust deed last mentioned, Peterson, the trustee, executed and delivered a release deed to Herbert, releasing the trust deed sought to be foreclosed in this cause; that a few days thereafter Herbert delivered the release deed to the attorney for William and Mary Kruse, together with his warranty deed, conveying the premises to William and Mary Kruse, and thereupon William and Mary Kruse paid to Herbert the purchase price in full, in accordance with the terms of the contract entered into by Herbert and William and Mary Kruse. There is nothing in this record to show that the assignee of the notes, secured by the trust deed, ever filed anything of record, showing that he was the holder of the notes secured by the trust deed, sought to be foreclosed in this proceeding.

It has long been the settled rule in this State that a mortgage or trust deed is non-negotiable, even though given to secure negotiable notes, so that the assignee of a mortgage or trust deed takes subject to all the infirmities to which it is liable in the hands of the mortgagee. *Olds v. Cummings,* 31 Ill. 188; *Hirsh v. Arnold,* 318 Ill. 28; *Doster v. Oulvey,* 233 Ill. App. 468; *Daniels v. Carr,* 233 Ill. App. 531. In *Hirsh v. Arnold, supra,*

at page 43, the court, among other things, said: "Nevertheless, a purchaser of a mortgage or trust deed takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and in equity the mortgagor is entitled to every defense against the assignee which he could have made against the original mortgagee."

As has been shown, the record is clear and convincing, and undisputed, that Herbert had neither actual nor constructive notice that the notes in question were held by appellant.

In *McAuliffe v. Reuter*, 166 Ill. 491, it appears that McAuliffe applied to one Neihoff for a loan, and executed his note for $1,000 payable to himself, indorsed in blank, and delivered to Neihoff, and executed a deed of trust to Neihoff, as trustee; Neihoff sold the note to Reuter, collected the interest, and paid the same to Reuter, the holder; McAuliffe, not knowing that Reuter held the note, paid on the principal from time to time, to Neihoff, the trustee; Neihoff failed, and Reuter brought a bill to foreclose for the entire principal of the note, having received none of the payments made on the principal by McAuliffe to Neihoff, the trustee; the trial court entered a decree of foreclosure, which, upon appeal, was reversed. The court, in deciding the case, at page 498 said: "By virtue of the transaction certain equities arose in favor of the mortgagor to have said deposits applied to the extinguishment of his debt, which clearly could have been enforced by him had the bill to foreclose been filed by Neihoff." On page 499, the court further said:

"We are satisfied that the case at bar falls within the general rule, and not within any exception to it, established in this State. Besides, upon principle, an assignment of a chose in action, other than a negotiable instrument, is not perfect, so as to protect the assignee as against equities between the original parties, without notice of the assignment to the debtor. This is the

general rule, and, unless mortgages and deeds of trust are to be treated as exceptions, the rule must be applied to them. Thus it is said in 2 Am. & Eng. Ency. of Law (2nd Ed.) 1079: 'The assignee of a chose in action stands exactly in the shoes of his assignor. He succeeds to all of his rights and privileges, but acquires no greater right than his assignor had in the thing assigned.' If the assignee would protect himself, he should give notice of the assignment to the debtor. If the business of the commercial world requires that mortgages shall pass, with the negotiable paper secured by them, free from the infirmities of non-negotiable contracts, the General Assembly has full power to so provide.''

A person buying a mortgage takes it subject to all the infirmities to which it is liable in the hands of the mortgagee, and in equity the mortgagor is entitled to every defense against the assignee which he could have made against the mortgagee himself. *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84–91; *Doster v. Oulvey,* 233 Ill. App. 468–473. Where the assignee of a mortgage had failed to notify the mortgagor of the acquisition of the mortgage, such mortgagor is entitled, in the absence of knowledge of the transfer of the security, to show, as against the assignee, all payments made upon the mortgage, after the assignment to the mortgagee. *Bensley v. Bartholf,* 137 Ill. App. 420; *McAuliffe v. Reuter,* 166 Ill. 491; *Doster v. Oulvey, supra.*

Furthermore, the general rule is that when the assignee of a mortgage fails to notify the mortgagor of his acquisition of the mortgage, such mortgagor is entitled, in the absence of knowledge of the transfer of the security, to show in equity, as against the assignee, the payment made upon the mortgage after the assignment to the mortgagee. *Daniels v. Carr,* 233 Ill. App. 531–532; *Bensley v. Bartholf,* 137 Ill. App. 420, aff'd 234 Ill. 336; *McAuliffe v. Reuter,* 166 Ill. 491.

The assignee, to protect himself from payments made to the mortgagee, must give notice to the mortgagor of the assignment. *Gemkow v. Link,* 225 Ill. 21; *Daniels v. Carr, supra.* The doctrine of innocent purchaser, for value, which applies to commercial paper, has no application to a mortgage. The assignee of a mortgage knows that it is not assignable at common law, but only in equity, and that he takes it subject to existing equities in favor of the mortgagor. *King v. Harpster,* 306 Ill. 202–209. That being true, he stands in the same position, whether he purchased the mortgage before or after maturity. *Daniels v. Carr, supra.* Since the law necessarily arises out of the facts in each particular case, the authorities relied upon by the plaintiff in error are not controlling in this case.

From an examination of the authorities, we have reached the conclusion that the rule of law in this State is that an unauthorized release of a trust deed, by the trustee, before maturity, in payment of the notes, will not release the lien, but where the notes have, in fact, been paid to the person authorized to receive payment, the trust deed will be discharged, even though the notes had been assigned before payments were made, provided, however, that the person liable on the notes did not have notice of such assignment.

It is insisted that the fact the release and deed were not promptly recorded should defeat the contention of defendants in error. The attorney for Kruse received the trust deed and placed it among his papers and failed to return it to Herbert or Kruse, so that it might be entered of record. The evidence shows it was merely an oversight on the part of McNerney, attorney for William and Mary Kruse, in failing to have the release and deed recorded; it was no fault of Kruse, his wife, nor Herbert's. The status, however, between Kennell and William and Mary Kruse was determined and fixed at the time the release deed was delivered to

Herbert, and the failure to record the release deed did not change that status.

We conclude, therefore, that the chancellor was correct in dismissing the bill for the want of equity, and the decree of the circuit court of Kane county will be affirmed.

*Decree affirmed.*