DUPREE *v.* VIRGIL R. COSS MORTGAGE COMPANY.

Opinion delivered November 3, 1924.

1.  PRINCIPAL AND AGENT—COMMISSION TO LENDER'S AGENT.—Where a partnership acted as an intermediary between a borrower and a lender, by inspecting the property, approving the loan, preparing notes and mortgages on blanks furnished by the lender, paying over the money loaned to the borrower, collecting interest on the loans and looking after the payment of taxes on the mortgaged property, such partnership will be held to be the agent of the lender in exacting a commission from the borrower for securing the loan.

2.  USURY—COMMISSION TO LENDER'S AGENT.—Where a borrower who, after a commission to the lender's agent was deducted, received only $1,000, and, in order to repay same, would have to pay more than $1,000 with interest at 10 per cent. per annum for the term of the loan, the contract is usurious.

3.  USURY—INVALIDITY OF CONTRACT.—Though a mortgage given to secure a loan provided that, if interest in excess of the legal maximum is charged, it is through error in computation and

will be credited on the amount remaining unpaid, such provision will not prevent the taint of usury from attaching to such contract where no mistake in computation is shown, but simply a mistake as to the legal effect of the contract.

4. USURY—PRESUMPTION.—Where a note and mortgage securing a loan to a borrower residing in Arkansas provided that debt and interest were payable at the home office of the lender in Oklahoma, and, under the laws of Arkansas, the contract was usurious, but, under the laws of Oklahoma, the contract was valid, except as to the interest, the presumption is that the parties intended to contract with reference to the law of the place of performance, and with reference to the law upholding rather than invalidating the contract.

5. USURY—CONTRACT TO AVOID USURY LAWS.—Although parties residing in different States may, in good faith, contract with reference to the law of either State, they cannot do so to avoid the force of the usury law of either State.

6. USURY—PRESUMPTION AS TO GOOD FAITH.—Where a note and mortgage securing a loan to a borrower residing in Arkansas provided that the debt and interest were payable at the home office of the lender in Oklahoma, evidence *held* not to overcome the presumption that the parties contracted in good faith with reference to the laws of Oklahoma.

7. USURY—OKLAHOMA STATUTE.—The usury law of Oklahoma, as amended in 1916 (Comp. Stat. 1921, § 5098), does not render a usurious contract void or even voidable.

8. APPEAL AND ERROR—FAILURE TO PLEAD SET-OFF OR COUNTERCLAIM.— Where, in suit to cancel note and mortgage on ground of usury, which was governed by the Oklahoma law, appellants failed to plead in the court below by way of set-off or counterclaim, benefits to which they were entitled under Comp. Stat. Okla. 1921, § 5098, they cannot thereafter complain on appeal.

Appeal from Chicot Chancery Court; *E. G. Hammock*, Chancellor; affirmed.

*John Baxter* and *R. W. Wilson*, for appellant.

The contract is usurious and void for the reason that the American Farm Mortgage Company was the agent of the lender, and the latter has attempted to exact interest and commission in excess of ten per cent. per annum. 27 R. C. L., 203-204; Crawford & Moses' Digest, § 7354; *Id.* § 7362; *Id.* §§ 7363, 7364, 7366. The

calculation of interest on this loan by G. A. Franklin, following the rule approved in the case of *Green* v. *Conservative Loan Life Insurance,* 153 Ark. 219, shows it to be usurious, in that more than ten per cent. was charged. The commission collected here was not only known to, but equally shared in, by the lender with the agent. 51 Ark. 535; 54 Ark. 40 to 57 inclusive. See also 54 Ark. 573; 62 Ark. 375; 109 Ark. 69-77; 128 Ark. 74-75. The power of attorney naming the American Farm Mortgage Company as the agent of the borrower was a mere subterfuge, and will not be tolerated. 100 Ill. 611; 54 Ark. 40-57. A transaction is no less usurious because payment is made to the lender himself, or, as in this case, is equally shared by the lender with the agent. 132 Ark. 376, 377. It having been shown that more than ten per cent. per annum had been charged, it devolved upon the appellee to show that an honest mistake had been made, otherwise that clause in the mortgage disclaiming any intention to charge excessive interest was shown to have been a mere device or subterfuge to conceal the usury. 62 Ark. 380; 132 Ark. 377. A mutual agreement to give and receive unlawful interest is not necessary to constitute usury. If it be actually reserved, taken or secured, or agreed to be taken or reserved, the contract is usurious. 37 Minn. 441; 135 Ark. 578. Since a simple calculation of interest, as was done in this case, shows that more than ten per cent. was charged, the case depends upon the question of agency, and the facts in the case clearly disclosed the American Farm Loan Company's agency for the lender. 138 Ark. 262, 267; 150 Ark. 612; 2 Corpus Juris, 448, and note 78-B; 31 Cyc. 1661-1662. The facts establish the strongest form of agency, viz., a partnership, under all the tests of that relationship. 20 R. C. L. 27; *Id.* 823 (27) (28); *Id.* 825 (29); 63 Ark. 518-526; 87 Ark. 417; 44 Ark. 423; 63 Ark. 518; 74 Ark. 437; 80 Ark. 23; 87 Ark. 412-418; 143 U. S. 611; 91 Ark. 26-30; 95 Ark. 406-9; 144 Ark. 621-629.

*W. D. Jones* and *James M. Golden,* for appellees.

The burden is upon the party pleading usury to show that the transaction is usurious, by clear and cogent proof. 24 A. L. R., 856; 14 Ore. 47, 12 Pac. 89; 44 Ore. 530-533, 1 Ann. Cases, 418; 27 R. C. L. 268; 159 Ark. 141; 135 Ark. 578, and cases cited; 18 N. J. Eq. 481; 54 Ark. 566-569; 105 Ark. 661; 107 Ark. 21. To constitute usury there must be an agreement to pay for the use of money more than ten per cent. 54 Ark. 566-569. And the wrongful act of usury will never be imputed to the parties, and it will not be inferred where the opposite conclusion can be reasonably and fairly reached. 91 Ark. 462; 67 Ark. 370; 68 162; 74 Ark. 241; 83 Ark. 31; 87 Ark. 534. The intention of the parties is the principle that governs. 153 Ark. 219. Even if the American Farm Mortgage Company be held to be the agent of appellee in this transaction, still there can be no usury because of the provision in the mortgage to the effect that the interest should not, in any event, exceed the maximum legal rate permitted by the laws of Arkansas, and that any excess collected should be credited upon principle or interest remaining unpaid upon discovery of the erroneous overcharge. 56 Ark. 340; *Id.* 339; 129 Ark. 167; 167 S. W. 362. The statement of facts and the reasoning of the court in the case of *Bolt* v. *Kirby,* 57 Ark. 251, refute the contention of counsel for the borrowers here that the American Farm Mortgage Company was acting as the agent of appellee in making the loans. To sustain the plea of usury it must appear that excessive interest was paid to the lender or that a bonus or commission was paid to the agent of the lender, with his knowledge, or under circumstances from which his knowledge will be presumed, which, when added to the interest paid or to be paid, would exceed the lawful rate. A bonus or commission paid to the agent of the borrower will not make the transaction usurious. 54 Ark. 573; 51 Ark. 548. It is provided in the notes and mortgages that the same should be payable at the office of

appellee in Muskogee, Oklahoma. The transaction is governed by the laws of that State. 25 Ark. 53. Oklahoma Statutes, § 5097; 59 Okla. 215; 39 Cyc. 899; 15 N. Y. 986; 39 Cyc. 1054-1055.

*Williams & Williams, amici curiae.*

HUMPHREYS, J. Appellant brought suit against appellees in the chancery court of Chicot County to cancel a note and mortgage he executed to Virgil R. Coss Mortgage Company on the 17th day of November, 1920, and by it assigned to the New Milford Security Company, upon the ground that the contract provided for a greater rate of interest than 10 per cent. per annum, which rendered it usurious and void under the laws of Arkansas, both as to principal and interest. It was alleged in the bill that appellant procured the loan from the Virgil R. Coss Mortgage Company, an Oklahoma corporation, residing at Muskogee, Oklahoma, through its agent, American Farm Mortgage Company, a partnership composed of H. D. Price and Guy V. Busenburg, which had its office at Pine Bluff, Arkansas; that the loan was for $1,300 on its face, payable in ten years, bearing interest at the rate of 7 per cent. per annum from date until paid, and it was agreed in the written application for the loan that $300 of the amount should be deducted as a commission to the American Farm Mortgage Company for procuring the loan, and that, pursuant to the contract, the cash bonus was deducted from the $1,300, which rendered the contract usurious. The mortgage in which the note was described was made an exhibit to the bill. The mortgage and note were executed in Arkansas, and made payable at the office of Virgil R. Coss Mortgage Company in Muskogee, Oklahoma. The mortgage also contained the following paragraph:

"It is agreed that the rate of interest herein reserved and charged shall not in any event exceed the maximum legal rate permitted by the laws of Arkansas. If interest in excess of the maximum legal rate has been charged, it is through an error in computation, and it is agreed that any excess collected above the maximum legal rate

shall be credited upon any amount, either principal or interest, remaining unpaid when such overcharge is discovered.''

The American Farm Mortgage Company filed a demurrer to the bill, which was sustained by the court.

The other appellees filed separate answers to the bill, denying each material allegation therein.

The cause was submitted upon the pleadings and testimony adduced, which resulted in a finding that there was no usury in the transaction, and a decree dismissing appellant's bill for the want of equity, from which finding and decree an appeal has been duly prosecuted to this court.

This is a companion case with that of Virgil R. Coss Mortgage Company v. Marcus and Malvina Jordan, appealed to this court from the chancery court of Drew County, involving the same issues. Much of the testimony was taken at the same time to be used and treated as testimony in each case. Learned counsel for appellant has summarized the facts disclosed by the testimony, which we adopt in the main, with some necessary additions, as a statement of the facts by the court. It is as follows:

''About twenty-five years ago, H. D. Price, who had for a number of years been engaged in the farm loan business, moved from Oklahoma City to Wilburton, Oklahoma, and opened up a bank. This placed him so far out of touch with his Eastern investors that he turned over, or was instrumental in turning over, his loans to the Virgil R. Coss Mortgage Company. From Wilburton, H. D. Price went to Keota, where, in addition to the banking business, he was at all times a farm loan man. When Price and Coss first became acquainted, they were competitors in Oklahoma City; afterwards Coss moved to Muskogee, where he is now operating the Virgil R. Coss Mortgage Company. For a number of years H. D. Price lived at Stigler, Oklahoma, where Price and Busenburg and a Mr. Zebold operated a farm loan brokerage under the name of the American Farm Mortgage Com-

pany.   About eight years ago, Mr. Price disposed of his business at Stigler and Keota, Oklahoma, and moved to Pine Bluff, Arkansas, where he and Guy V. Busenburg formed a partnership under the name of American Farm Mortgage Company.   Mr. Zebold, who had formerly been with Price and Busenburg at Stigler, moved to Muskogee and became associated with the Virgil R. Coss Mortgage Company as vice president.   For several years prior to this time the Coss Mortgage Company had been handling loans for the American Farm Mortgage Company.   Mr. Coss states that it was generally understood that if, upon the investigation of the Arkansas territory, he found it a desirable place to make loans, he would handle their business.   At that time the Virgil R. Coss Mortgage Company had never done business in Arkansas, but, shortly after the American Farm Mortgage Company was organized at Pine Bluff, it entered the State of Arkansas as a foreign corporation, for the sole purpose of handling loans secured by the American Farm Mortgage Company, and named H. D. Price as its agent for service of summons.

"The American Farm Mortgage Company advertised in the papers and by circular letters that it had money to loan on long time paper at a low rate of interest, but confined its business, almost exclusively, to colored people.   When it received an application for a loan from a prospective customer, H. D. Price, the field man of the American Farm Mortgage Company, would go and inspect the property, and, if he found it desirable security for the amount applied for, he took the mortgages and notes, and then and there, in the name and on the blank forms of the Virgil R. Coss Mortgage Company, and, in some instances, as in the Dupree case, secured a power of attorney from the borrower, designating the American Farm Mortgage Company agent to secure a loan for him, and forwarded same with the application, the mortgages and notes, direct to the Virgil R. Coss Mortgage Company, always at the time fixing the rate of interest and the length of the loan, and never at any

time going into the open market, unless the loan was turned down by the Virgil R. Coss Mortgage Company.

"The blank mortgages, the principal notes and the commission notes all were prepared and furnished by the Virgil R. Coss Mortgage Company, which kept them on hand, and used them in preparing the papers. When the loan application, with notes and mortgages, were sent to the Virgil R. Coss Mortgage Company, the American Farm Mortgage Company proceeded to inspect the land, to have the title to the land perfected, always had same approved by the attorney for the American Farm Mortgage Company and the Virgil R. Coss Mortgage Company. If it was a big loan, Coss and Price made a joint inspection. When the title was perfected, the money was sent by the Virgil R. Coss Mortgage Company to the American Farm Mortgage Company, and was disbursed in paying off other mortgages, in perfecting the title and paying for the recording of the papers from the borrower to Coss, and the balance, if any, was turned over by the American Farm Mortgage Company to the borrower. In some cases a first mortgage and a second mortgage were taken, and all the notes secured by the same given to the Virgil R. Coss Mortgage Company, and the second in the name of the American Farm Mortgage Company, and the notes secured by each mortgage were given to Coss Mortgage Company and the American Farm Mortgage Company, respectively. In other instances, only one mortgage and one set of notes were taken, and that in the name of Virgil R. Coss Mortgage Company, the commission being deducted at the time the money was disbursed. The work of securing the loan, of perfecting the title, of disbursing the money and recording the lender's paper, was all attended to by the American Farm Mortgage Company. The Virgil R. Coss Mortgage Company advanced the money, found a market for the loan, and attended to all other features of the business at the Oklahoma office, each doing about one-half of the work. The commission was then divided between the two companies on a fifty-fifty basis. When payment

became due, either on the commission or the principal notes, collections were made by the American Farm Mortgage Company on instructions of the Virgil R. Coss Mortgage Company to the borrower, regardless of how the loan was made, whether two mortgages, one mortgage in the name of Coss and one in the name of American Farm Mortgage Company, or both to Coss, or whether one mortgage only to Coss and a cash commission paid. If the borrower failed to pay taxes, they were paid by the American Farm Mortgage Company. If the borrower was delinquent on any payment necessary to the protection of the lender, he was ofttimes notified by both companies, and always notified by both companies to make payment through the American Farm Mortgage Company.

"If the borrower failed to meet his payments, and a loss was sustained thereby, the Virgil R. Coss Mortgage Company charged back to the American Farm Mortgage Company its proportion of the loss, thus equally sharing the profits when there was a profit, and equally sharing the loss when there was a loss.

"In addition to the connection in Pine Bluff with American Farm Mortgage Company, the Virgil R. Coss Mortgage Company now has a partnership in Fort Smith, Arkansas, and their business is handled in the same way and on the same basis."

The testimony also disclosed that appellant agreed, in his written application for the loan, to pay the American Farm Mortgage Company $300 as a commission for procuring the loan, to be deducted from the amount borrowed; that appellant executed his note and mortgage for $1,300, payable in ten years, at the rate of 7 per cent. per annum from date until paid; that ten coupon notes for $91 each were executed to cover the ten annual interest payments maturing each year; that, pursuant to the agreement in the application, a $300 cash bonus was deducted from the loan and equally divided between the Virgil R. Coss Mortgage Company and the American Farm Mortgage Company; that the American Farm

Mortgage Company also deducted from the $1,000 balance $201.63 as expenses, several items of which were not properly chargeable to appellant, only paying appellant in actual cash $798.37 out of the $1,300 loan.

The initial question arising on this appeal for determination is whether or not the American Farm Mortgage Company acted as agent for the Virgil R. Coss Mortgage Company in negotiating the loan, or whether said mortgage company was the exclusive agent of appellant. While the application for the loan constituted the American Farm Mortgage Company the agent of appellant, the services rendered by that partnership to the Virgil R. Coss Mortgage Company in this and other transactions convinces us that said partnership was really representing the Virgil R. Coss Mortgage Company, and not appellant. The American Farm Mortgage Company inspected the property, approved the loan, prepared the note and mortgage on blanks furnished by the Virgil R. Coss Mortgage Company, paid over the money to appellant, after deducting the expenses and commission, which commission was divided between the two companies, collected the interest on this and other loans, and looked after the payment of taxes on the mortgaged property. The relationship between the two companies, as reflected by the evidence, constituted an agency in the law. *Banks* v. *Flint,* 54 Ark. 40; *Ellis* v. *Terrell,* 109 Ark. 69; *Tompkins* v. *Vaught,* 138 Ark. 262; *McHenry* v. *Vaught,* 150 Ark. 612.

The next question to be determined is whether the contract is usurious. Appellant received in actual cash only $1,000, for which he executed a note to the Virgil R. Coss Mortgage Company in the sum of $1,300, payable in ten years, with ten coupon notes attached in the sum of $91 each, to cover the interest for a period of ten years. In order to repay the loan under the contract he would have to pay $2,291, or $291 more than enough to repay the $1,000 actually received with interest thereon at the rate of 10 per cent. per annum, the highest rate allowable, for ten years. This is the method of calcula-

tion approved in the case of *Ellis* v. *Terrell,* 109 Ark. 69, the test announced in that case being whether the borrower would have to pay more than 10 per cent. per annum on the money actually received under the contract, if fully executed. The contract is therefore usurious and void under the Arkansas law, unless saved by the clause in the mortgage to the effect that no usury was intended. This clause only related to errors in computation or calculation. No contention is made that the excess charge above the maximum legal rate of interest was the result of errors in computation or calculation. On the contrary, the testimony reveals that appellees intended to charge 7 per cent. per annum and deduct a $300 cash bonus. A clause of this kind cannot prevent the taint of usury attaching to a contract, where there was no mistake of fact, but simply a mistake as to the legal effect thereof. *Castleberry* v. *Weil,* 142 Ark. 627.

The next question arising for determination is whether the contract is an Arkansas or an Oklahoma contract. At the time the contract was made appellant was a resident of Arkansas, and the Virgil R. Coss Mortgage Company was a resident of Oklahoma. While it had qualified to do business in this State as a foreign corporation, it still retained its domicile in Oklahoma. The mortgage and note contained a provision making the debt and interest payable at the home office of the Virgil R. Coss Mortgage Company in Muskogee, Oklahoma. There is no direct evidence in the record tending to show why this paragraph was inserted in the contract. No one has testified that it was inserted in order to evade the usury laws of Arkansas, and, if such an inference is drawn, it must be drawn from the circumstances alone that the Virgil R. Coss Mortgage Company denied that the American Farm Mortgage Company was its agent, and its further claim that it was the purchaser of the note and mortgage in the open market. The inference could be as readily drawn that the contract was made performable in Oklahoma because it was the *bona fide* residence of the Virgil R. Coss Mortgage Company. In

order to indulge the inference that the parties intended to contract with reference to the laws of Arkansas, the evidence should be of sufficient weight to overcome two presumptions to the contrary, the first being that the parties intended to contract with reference to the place of performance, and the second that the parties intended to contract with reference to the law that would uphold, rather than one that would invalidate, their contract. It is the law that parties residing in different States may, in good faith, contract with reference to the law of either State, but would not be permitted to do so for the purpose of avoiding the force of the usury law in either one of the States. *Whitlock* v. *Cohn,* 77 Ark. 83; *Wilson-Ward Co.* v. *Walker,* 125 Ark. 404. We do not think the evidence in the case sufficient to overcome the presumption that the parties contracted, in good faith, with reference to the laws of Oklahoma, where the contract is valid, and where the penalty for contracting for more than 10 per cent. interest per annum works a forfeiture of the interest only.

No error appearing, the decree is affirmed.

McCULLOCH, C. J. I agree to the conclusion reached in this case and to all of the opinion except the following sentence: ''It is the law that parties residing in different States may in good faith contract with reference to the laws of either State, but would not be permitted to do so for the purpose of avoiding the force of the usury law in either one of the States.'' The authorities cited to sustain this statement of the law (*Whitlock* v. *Cohn,* 72 Ark. 83, and *Wilson-Ward Co.* v. *Walker,* 125 Ark. 404) do not, in fact, sustain it. In *Whitlock* v. *Cohn,* the court said:

''Where the intention of the parties is not otherwise more directly and definitely expressed in the contract, nor can be otherwise inferred, the place of payment will determine the law with reference to which parties have contracted; but parties will not be presumed to have contracted with reference to a law which will have the effect of annulling their contract for illegality in its very

making, where another intention can be gathered, unless it be found that they were seeking in some way to avoid the force of the law, as in case of usury, for instance. The contract of the parties would be valid on its face under the laws of Arkansas, but not under the laws of Illinois. The presumption is against the contention that the parties contracted with reference to the laws of Illinois.''

This is far from stating the rule deduced from it by the majority in this case that, where the parties reside in different States, their right to contract with reference to the laws of either State and the presumption that they have done so, is subject to the qualification that it must be done in good faith. The authorities on this question are thoroughly reviewed in the annotations in the case of *Green* v. *Northwestern Trust Co.,* 128 Minn. 30, L. R. A. 1916D, p. 739, and the Alabama case of *United States Saving & Loan Co.* v. *Beckley,* 62 L. R. A. 33. The rule deducible from all the authorities, as shown by the case notes referred to, is that, where a contract for the payment of money is executed in one State and is to be performed in another, the presumption is that the parties contracted with reference to the laws of the State where the contract would be valid and enforceable, unless it be shown that the form of the contract was adopted in bad faith to evade the usury law. Where, however, the parties reside in different States, they have the absolute right to contract with reference to the laws of either one of those States in which the contract is valid, and it does not constitute an evasion of the law merely because they make the election in order to take advantage of the laws where the contract is not usurious. It is only where parties residing in different States undertake to make a contract referable to the laws of still another State that the question of good faith or evasion can arise. If the contract is a lawful one, the presence of a bad motive will not invalidate it, and when parties residing in different States contract with reference to the laws of either,

as they have a legal right to do, they necessarily do so for the purpose of gaining some advantage by the election, and, if that is to defeat their contract, it is equivalent to denying them the right to make the election.

Where the question of usury is involved, if the facts are undisputed, it became a question of law for the court, and, as before stated, when the parties reside in different States, they are presumed to contract with reference to the laws of the State which will uphold the contract, and it is the duty of the trial court to declare, as a matter of law, that the contract is not usurious. The contract under these circumstances cannot be defeated merely by showing that the motive was to escape the usury law of one State and to get the advantage of the less onerous one in the other.

In the principal case cited in L. R. A. 1916D, p. 743, the court said:

"The parties cannot arbitrarily assign their contract to a particular State. * * * Effect can be given to the presumed intention that the law of a particular State shall be the governing law only when such State has a vital connection with the transaction; or where elements of the contract, important in determining the governing law, have their *situs* in such State."

In that case, where the parties resided in different States, the court declared as a matter of law that the contract was valid under the presumed intention to contract with reference to the laws of the State which upheld the contract.

In the case of *Mortgage Co.* v. *Jefferson,* 69 Miss. 770, the borrower resided in Memphis and the lender resided in New York, and the parties undertook to contract with reference to the laws of Mississippi, but the court held that this was an evasion, and, in doing so, said:

"The presumption of law is always in favor of the legality of purpose and motive of contracting parties; and, where a contract is made in one State, to be executed

in another, and, under the laws of one would be illegal and under those of the other legal, it is reasonable to presume that the parties intended their contract to be controlled by the laws of the State in which it would be valid, and so the courts will, in furtherance of a presumed lawful intention, assign it to that State of which its validity will be upheld. * * * This is not a case for the application of the rule of favoring a lawful purpose by presumption, but it is one in which the parties, manifestly and purposely providing for usury, have sought to cloak the transaction and evade the laws against usury by which their contract is controlled by stipulating that, if litigation shall arise, the laws of another State may be invoked as a shield to the usurer. The laws of this State and access to its courts cannot be thus made the subject of contract.''

Let us suppose that in this case the agent for the lender had been called as a witness and asked what his purpose was in making the contract payable in Oklahoma, the place of the lender's domicile, and he frankly replied that he understood the law to be that he had the right to contract with reference to the laws of either State and that he chose the laws of Oklahoma because it was less onerous with respect to usury. According to the qualification stated by the opinion of the majority, this would make the contract void, and yet that is really the only reason the parties could have had in choosing the laws of Oklahoma as controlling. It is also the reason why the law presumes that they intended to contract with reference to the laws of that State. It is, I think, incongruous to say that the motive and reason for making the election defeats the contract which would otherwise be lawful.

Justice SMITH concurs in views here expressed.

HUMPHREYS, J., (on rehearing). On motion for rehearing our attention has been called to the fact that at the time the mortgages in question were executed the law of Oklahoma relating to the penalty for usury had been amended by an act of the Legislature in 1916, citing § 5098, Comp. Stats. 1921. We do not understand that the amended statute rendered an usurious Oklahoma contract void or even voidable, as does the law in Arkansas. *Stockyards State Bank* v. *Johnson*, 152 Pac. 585. The only change the amended statute made in the Oklahoma law relative to the penalty for usury was to allow the injured person to plead as a set-off or counterclaim in a suit brought upon the contract twice the amount of the entire interest collected, recovered, charged, or received in said transaction or in all such transactions between the same parties. The exact language of the proviso in the statute is as follows: "Provided further, that, when any suit is brought upon any note, bill or other evidence of indebtedness or to foreclose any mortgage or lien given to secure such indebtedness when a greater rate of interest has been collected, reserved, charged, or received than is provided for in the act, the defendant, or his legal representative may plead as a set-off or counterclaim in said action twice the amount of the entire interest collected, reserved, charged or received in said transaction or in all such transactions between the same parties."

Neither Dupree nor Jordan pleaded by way of set-off or counterclaim the benefits to which they were entitled under the Oklahoma statute of 1916, and, having failed to claim the benefit thereunder, cannot now be heard to complain.

The Virgil R. Coss Mortgage Company did not request a rehearing and modification of the opinion, hence the directions to the lower court will not be changed.

For the reasons given the motion for a rehearing is denied.