Arnold K. Marks, Appellee, v. Nicholas A. Pope et al., Appellants. Eva Browarsky, Appellee.

Gen. No. 38,707.

Opinion filed March 30, 1937. Rehearing denied April 13, 1937.

Arnold D. McMahon, for appellants.

Rosenberg, Toomin & Stein, of Chicago, for appellees; Benjamin Rosenberg and Philip R. Toomin, of counsel.

Philip A. Weinstein, of Chicago, for appellee Eva Browarsky.

Mr. Justice Scanlan delivered the opinion of the court.

Defendants appeal from a decree in a foreclosure proceeding. The material parts of the bill allege, in substance, that on October 8, 1925, Nicholas A. Pope and Marie R. Pope, his wife, defendants (hereinafter called appellants), being indebted in the sum of $40,000 to the owners of the bonds described in the bill, executed and delivered their 58 bonds, in certain denominations, dated October 10, 1925, payable to the order of bearer at the maturity dates set forth in the bill; that the bonds bore interest at seven per cent per annum, payable semiannually and evidenced by interest coupons, principal and interest being payable at the office of Marks & Company; that to secure the payment of the bonds and interest coupons appellants conveyed to Arnold K. Marks, as trustee, certain real property; that bonds numbered 1 to 36, both inclusive, aggregating $18,000, with all interest thereon, had been paid, surrendered and cancelled; that the interest on bonds numbered 37 to 58, both inclusive, due on or prior to October 10, 1932, had been fully paid and the coupons surrendered and cancelled; that default was made in the payment of the principal of bonds numbered 37 to 58, aggregating $22,000 and maturing October 10, 1932; that Marks & Company had on hand the sum of $696.41 to apply on the indebtedness; that the trustee brings his bill to foreclose for the use and benefit of the owners and holders of the unpaid bonds; that there is due the sum of $21,303.59, with interest at seven per cent per annum from October 10, 1932; "that Eva Browarsky and Arthur Feldman own some or all of the bonds secured by the mortgage herein sought to be foreclosed." The joint and several answer of appellants admits the execution of the bonds, interest coupons and trust deed; admits that bonds numbered 1 to 36 were paid, surrendered and cancelled, and that

all interest coupons maturing on and prior to October 10, 1932, were paid; denies that $21,303.59 was due, and charges that because of the principal and interest already paid and the usury connected with the transaction, there was nothing due from appellants. The answer sets out parts of the Illinois statutes against usury and states that before the execution of the bonds and interest coupons it was unlawfully agreed between Louis Marks, Arnold K. Marks, Isaac Marks and Bessie Greenebaum, copartners, doing business under the firm name of Marks & Company (hereinafter called the copartnership), and appellants, that the copartnership should pretend to loan to appellants $40,000 and "should forebear the same for the period embraced between October 8, 1925, and until October 10, 1932, both inclusive," but that the copartnership should deduct and retain out of the $40,000 loan evidenced by the bond issue an unlawful commission of ten per cent, that is, $4,000, which together with the further charge of seven per cent interest on the bonds constituted an exaction of usury contrary to the statute; that the bonds and interest coupons were executed pursuant to such unlawful agreement and that the copartnership kept said $4,000, but then and there received from appellants the said 58 bonds and interest coupons. The answer claims credit for all interest paid and alleges that appellants' indebtedness has been overpaid in the amount of $1,348.25; avers that the premises sought to be foreclosed were obtained by appellants as assignees of a certain contract, set out in full in the bill, between Isaac Marks and Abraham L. Freeman; that the premises were the property of the copartnership and that the said bonds and interest coupons were delivered to the copartnership in payment of the balance due on the purchase of the real estate. No replication to appellants' answer was filed by complainant, although the decree erroneously recites to the

contrary. Eva Browarsky was defaulted on October 13, 1933. Arthur Feldman filed a short answer in which he states that ''he has no knowledge of the allegations in the bill of complaint contained, save from a reading thereof, and therefore neither admits nor denies the same, but demands strict proof thereof; . . . denies that the complainant is entitled to the relief, or any part thereof . . .''

In the hearings before the master to whom the cause was referred, appellants contended that they should be credited with the alleged usurious transaction, $4,000, and all interest paid by them. We shall hereafter refer to certain other credits claimed by appellants before the master. No question of estoppel *in pais* was raised by complainant before the master. The bill contains no allegation that Eva Browarsky and Arthur Feldman were *bona fide,* innocent holders of the bonds and the master made no finding in that regard. Upon the usury issue the master found that that defense had not been established by appellants. On April 3, 1934, the master's report was submitted to the trial court, and the objections of appellants were allowed to stand as exceptions. On July 2, 1934, after a number of hearings, the trial court announced orally that the defense of usury had been established and that he intended to sustain the exceptions that related to that issue. At the request of complainant further hearing upon the report was continued to July 11, 1934. On that date Eva Browarsky, by leave of court, filed a petition setting up, *inter alia,* that she was the *bona fide* owner of $21,000 of the bonds; that she expected that complainant would protect her interests, and that she files the petition because she had just discovered that appellants had interposed the defense of usury and that if such defense is sustained a substantial portion, if not her entire interest, would be barred, and that appellants should be estopped from interposing and prosecuting any such defense against her in-

terest. She prays that the default entered against her be vacated and that she be given leave to file her petition, that all necessary parties be required to make answer thereto, and that there be a hearing upon her petition. All parties were ordered to plead, answer or demur to the petition. Appellants filed a general and special demurrer to the petition and the petitioner was then given leave to withdraw it; but, over the objection of appellants, the default entered against her was vacated and she was allowed to file her answer to the bill "without prejudice to the order of reference herein or to the report of the Master in Chancery." In a very short answer she merely admits all of the allegations of the bill and prays that complainant be given the relief he asks.

The trial court did not enter a decree until November 1, 1935. In so far as it is material to this appeal, it found that the $4,000 constituted and was an usurious exaction from appellants by said Isaac Marks and Louis Marks, doing business as Marks & Company, but that because the bill was brought by the trustee for the benefit of Eva Browarsky and Arthur Feldman, two holders of bonds, who purchased them immediately after their issue for a valuable consideration, and because of the provisions of the trust deed, appellants and Charlotte S. Barton, the owners of the equity of redemption, were precluded from urging the defense of usury. The decree found that Arnold K. Marks, trustee, complainant, had been a member of the copartnership since 1926; that appellants owed:

"Principal amount of bonds 37 to 58, both inclusive.............................$22,000.00
Interest on $22,000 at 7% per annum from October 10, 1932 to October 26, 1935................................. 4,681.33

Total.....................$26,681.33"

also master's fees and certain additional costs, and the premises were ordered sold unless appellants paid to complainant, within three days of the entry of the decree, $28,927.68.

Appellants complain that the court erred in setting aside the default of Eva Browarsky. The latter is a sister of Isaac Marks, an aunt of complainant, and mother of William Browar, in whose name the copartnership originally took title to the premises. She kept money on deposit with the copartnership and made investments through it. The default against her, entered October 13, 1933, was set aside on January 22, 1935, over six months after the trial court had announced that he found that usury had been established. As appellants argue, the purpose in bringing her back into the proceeding is obvious. The trial court would have been justified, under the record, in refusing to vacate the default, but in our view of this appeal we do not deem it necessary to pass upon the question as to whether he erred in vacating it. It is true, however, as appellants argue, that after the petition of Eva Browarsky had been withdrawn, there was no pleading or showing before the court upon which to base the order vacating the default. It is also true, as appellants contend, that at the time the decree was entered there was nothing before the court upon which a finding could be based that Eva Browarsky and Arthur Feldman were *bona fide,* innocent holders of bonds. The bill contains no allegation that they were. Arthur Feldman, in his answer, practically denied that he was the owner of any of the bonds. The bill alleges that the unpaid bonds aggregated $22,000 but that Marks & Company had $696.41 to apply on the indebtedness. Eva Browarsky, in her petition, alleged that she was the *bona fide* owner of $21,000 of the bonds, which would make her the owner of practically all of the unpaid bonds. In her answer she does not allege that

she is a *bona fide,* innocent holder of the bonds. The *bona fides* of the two alleged bondholders was not made an issue in the cause, and no inquiry was made in respect thereto by the master or the trial court. Arthur Feldman was a brother of two stenographers employed by the copartnership, and the only reasonable inference from the record is that he was not the real owner of any of the outstanding bonds. It is significant that neither he nor Eva Browarsky testified in the cause. It is admitted that Marks & Company was "the house of issue of these bonds."

The trust deed in the instant cause contains the following provision (article 2, section 5):

"No bona fide innocent holder of any bond or bonds taken before maturity, shall be affected as to the benefit of this security by any equities or matters of defense which may exist in favor of any party in interest against any prior holder of the bond or bonds held by such bondholders."

After the trial court found that the defense of usury was established by the evidence, the case of *American Radiator Co. v. Walker,* 276 Ill. App. 150, was submitted to him by complainant. Thereafter the court held that the above provision constituted a waiver and an estoppel against appellants, and they were therefore precluded from pleading the defense of usury. It is conceded that the final ruling was based upon a statement of law in the above case. Complainant insisted before the trial court, and insists here, that "since the decision in the case of *American Radiator Co. v. Walker,* the defense of usury is no longer available as against bondholders who purchased their bonds for value before maturity." He contends that the rule of law stated therein controls our decision because the Supreme Court refused a *certiorari* in that case. The decision in the *American Radiator Co.* case was filed July 6, 1934. The statute then provided that an opin-

ion of the Appellate Court should not be of binding authority in any cause other than that in which it was filed, and our Supreme Court has frequently held that a denial of a *certiorari* is merely an approval of the conclusion reached by the Appellate Court, being, in effect, an affirmance of the judgment, and not necessarily an approval of the reasons given in the opinion of the Appellate Court for its judgment. When the Supreme Court overrules important and long-established doctrines it always does so in a direct way.

In the *American Radiator Co.* case the trust deed contained a similar clause to the' one in question contained in the instant trust deed. Referring to that clause the Appellate Court for the Second District stated (p. 243):

"By the terms of the trust deed Mrs. Walker guaranteed that so far as she was concerned there was no defense to the payment of the same. By the provisions of this trust deed Mrs. Walker has waived all equities and matters of defense that may have existed in her favor as to any prior holder of the bonds or bond held by such bondholder. Under the circumstances in this case she is now estopped from setting up the defense of ultra vires or usury against such bona fide holders of these bonds."

The opinion takes up approximately one hundred pages of the report, and the case differs in many particulars from the instant one. Its pleadings and evidence present an involved situation and the Supreme Court, in approving the conclusion reached, was not required to pass upon every statement of law made by the Appellate Court in its long opinion. But we are required to determine whether the Appellate Court of the Second District correctly stated the law as to the effect of the provision in the trust deed where the defense of usury is interposed. The court cites no case in support of its ruling, and none has been called to our attention that sustains it. With all due respect to the

opinion of that court, we cannot agree that the provision should be construed as a valid and binding covenant that the defense of usury will not be interposed against an innocent holder of any bond or bonds taken before maturity. Usury has been regarded with abhorrence from the earliest times, and laws have been made to punish those who practice it.

"Usury is a moral taint wherever it exists, and no subterfuge shall be permitted to conceal it from the eye of the law; this is the substance of all the cases, and they only vary as they follow the detours through which they have had to pursue the money lender." (27 R. C. L. 212.)

Illinois, like the other states, prohibits usury and fixes a penalty against the usurer. If we test the provision in question by its language alone, it appears that it does not refer to usury, and, as an agreement to waive usury is against public policy and void, it would be presumed that the parties did not intend, by the provision, to contract that appellants waived their right to assert the defense of usury. But if it were possible, because of the proof as to usury, to interpret the provision as broad enough to cover an agreement to waive that defense, it would avail complainant nothing. While it is true that the defense of usury is personal and may be waived by the debtor, it is not, in our judgment, the law that the parties to the usurious transaction may legally contract in the note, or in a trust deed executed simultaneously with the note, and in effect but a part of the same transaction, that the defense of usury will not be invoked by the debtor.

"Agreements involving waiver, which are contrary to public policy, for example, waiving a right in contravention of state policy or waiving illegality as a defense, are void." (67 C. J. 308.)

In *Union Nat. Bank of Chicago v. Louisville, N. A. & C. Ry. Co.*, 145 Ill. 208, where the right of the railroad company to interpose the defense of usury was

involved, it having agreed to pay more than the legal rate of interest, the court held (p. 227):

"Where an act is expressly prohibited by statute, a contract to perform or in furtherance of the prohibited act is illegal and unenforcible."

Under the statute building and loan associations chartered under the law of this state may, under two conditions, make loans on mortgage security which would ordinarily be usurious, but unless one or the other of the conditions is followed a usurious loan of such an association is subject to all the consequences and penalties of the law against usury. In *Anna Loan and Improvement Co. v. Dorris,* 342 Ill. 567, 573, the court said:

"The appellant had no power to make the contract for the payment of a premium in excess of the maximum rate of interest fixed by general law, save in one of the two modes prescribed by section 19. The statute was wholly disregarded; the power to make the contract was wanting, and performance by either party would not give it validity. To sustain the contention would be to nullify the statute."

In *Trusdell v. Dowden,* 47 N. J. Eq. 396, 398, the court said:

"The parties to a usurious contract can do nothing which will have the effect to validate it, so as to deprive the debtor of his right to defend on the ground of usury, except by expunging its usurious element."

In *Clark v. Spencer,* 14 Kan. 398, the court said (p. 404) that if a usurious loan accompanied by an agreement not to plead usury could be sustained it would amount to a very simple and effectual way of evading the law.

"The general statement is frequently made that, as usury is a personal defense, the borrower may waive it or ratify the usurious contract. But it is correct only as applied to executed waivers. . . . On the

other hand, since the usury statutes are based on public policy, it has been held that a usurious contract is wholly incapable of confirmation while it is executory, and that the debtor cannot, by any agreement entered into either when the usurious agreement is made or afterward, waive the right to set up usury in defense, or validate the contract by ratification.'' (66 C. J. 279, 280. Usury, sec. 258.)

In *Bosler v. Rheem,* 72 Pa. 54, Rheem had executed a note for $500, payable to one Bosler, for one year with interest at eight per cent, and at the same time he signed and executed an agreement waiving and releasing all his rights, if any, to retain, deduct, or withhold from the amount of the loan, or to bring any action at law or in equity for the recovery of excessive interest over the legal rate that might be paid prior to the repayment of the loan. The law of Pennsylvania imposed a penalty on usurious contracts, and the question in the case was whether or not the agreement signed by Rheem was a waiver of the defense of usury. The court said (pp. 56, 57):

''We cannot, and perhaps never could, hold that this right to reclaim excessive interest may be waived in a note, or by a contemporaneous instrument. It would be better to repeal the provision altogether than this, for it would be resorted to in every case of loan or contract. We cannot allow public policy to be set aside in this manner.''

In *Sturgis Nat. Bank v. Smyth,* 9 Tex. Civ. App. 540, 30 S. W. 678, it is said:

''The contention of plaintiff that defendants are estopped to plead usury is not well founded. . . . Had the makers of the usurious obligation, at the time of its execution, or afterwards, executed a separate obligation not to plead usury, we do not think it could be successfully urged as an estoppel. It would furnish too

ready a mode for the evasion of the grave provisions of our organic and statutory law.''

In *Dupree v. Virgil R. Coss Mtg. Co.,* 167 Ark. 18, 267 S. W. 586, the mortgage contained the following clause:

''It is agreed that the rate of interest herein reserved and charged shall not in any event exceed the maximum legal rate permitted by the laws of Arkansas. If interest in excess of the maximum legal rate has been charged, it is through an error in computation, and it is agreed that any excess collected above the maximum legal rate shall be credited upon any amount, either principal or interest, remaining unpaid when such overcharge is discovered.''

The court said (p. 589):

''The contract is therefore usurious and void under the Arkansas law, unless saved by the clause in the mortgage to the effect that no usury was intended. This clause only related to errors in computation or calculation. No contention is made that the excess charge above the maximum legal rate of interest was the result of errors in computation or calculation. On the contrary, the testimony reveals that appellees intended to charge 7 per cent. per annum and deduct a $300 cash bonus. A clause of this kind cannot prevent the taint of usury attaching to a contract where there was no mistake of fact, but simply a mistake as to the legal effect thereof.''

In *Ferguson v. Hamilton,* 35 Barb. 427, 438-9, the court said:

''The doctrine of estoppel *in pais* is based on principles of morality and good faith. It can be invoked only as a means to prevent the consummation of a wrong or fraud, and it has been well said, can only be used as a shield—never as a sword. It can be employed by such only as themselves act in good faith. Is it therefore available to the usurer? But it is said the indorsee or vendee of a note made to raise money, to

whom it is negotiated at an illegal discount on representations and assurances by the holder that it is business paper in his hands, becomes an unintentional usurer. Still the law pronounces him a usurer—a party to a corrupt agreement. Can such person bring to his protection a legal principle, based on moral considerations only, and thus give vitality to a transaction which the law pronounces immoral, and condemns? But the subject is not open to discussion in this court. It must be deemed here concluded by authority. The decisions are numerous, to the effect that an estoppel *in pais* may be urged against the defense of usury, as well as against other matters of defense which involve no idea of moral or legal turpitude in the party who invokes its protection. *But the matter of estoppel must exist outside the face of the paper."* (Italics ours.) As our Supreme Court stated in *Jenkins v. International Bank,* 97 Ill. 568, parties to the usurious agreement will not be allowed to evade the statute.

Appellants concede that a party may be estopped from urging the defense of usury against a *bona fide* holder of the usurious obligation, but they contend that the estoppel must arise by subsequent act, misrepresentation or conduct upon which the doctrine of estoppel *in pais* might be invoked. The authorities support this statement of the law. In the instant case appellants made no statements, agreements, or stipulations after the bonds and trust deed were executed and delivered to Marks & Company upon which the doctrine of estoppel *in pais* could be based, and the sole ground urged for the application of that doctrine is the provision in the trust deed. All of the cases cited by complainant in support of the ruling of the trial court involve an application of that doctrine. To briefly refer to them: In *Casler v. Byers,* 129 Ill. 657, the mortgage being foreclosed was executed in 1876. Byers secured the note after its maturity but at the time he bought it

Casler executed a statement in writing that there was $4,500 due on the note. As Byers acted upon this statement the doctrine of estoppel *in pais* applied and defendant was not allowed to claim that the said sum was not due at the time Byers purchased the note. In *Nixon v. Haslett,* 74 N. J. Eq. 789, as the assignee of a mortgage took from the mortgagor, at or about the time of the assignment, a declaration that he had no set-off against the mortgage debt, the same doctrine applied. A like situation was present in *Smyth v. Munroe,* 84 N. Y. 354. Complainant cites only a part of the text in 21 C. J. 1143–4, where there is a discussion of estoppel by representation as applied to negotiable instruments, omitting the following very important statement:

"However, to render this rule operative the representations must be *outside of the face of the obligation, and even though they are thus disconnected,* if they are made simultaneously with the execution of the obligation, so that there is in effect but a single transaction, *no estoppel will arise."* (Italics ours.)

2 Jones on Mortgages does not aid plaintiff. In section 1063 (p. 485) the author states that the rule in Illinois is that the assignee of a mortgage takes it subject to all equities existing between the original parties. In section 792 the author says (p. 77):

"A mortgagor may be estopped from setting up usury by reason of having executed, after the making of the mortgage, a covenant or certificate under seal that the mortgage was a valid and subsisting lien upon the premises described, especially if an innocent third party is thereby induced to buy the mortgage relying upon the statement."

In several cases cited by complainant usury was not involved: *Phoenix Mfg. Co. v. Bogardus,* 231 Ill. 528, was a suit in assumpsit upon a guaranty contract by which Bogardus undertook to be responsible for cer-

tain notes given by one Nielson in the purchase of machinery. Bogardus' demurrer to the declaration was overruled and he elected to stand by the demurrer. It was held that, whatever the terms of the original contract were, under the allegations of the declaration the appellant had induced the company, by his subsequent representation, to part with its property. In *Smith v. Newton,* 38 Ill. 230, complainant filed a bill to remove a mortgage as a cloud on title, on the ground that it was given without consideration. The original mortgagee, Dickinson, was defaulted. Smith answered that he was the owner of the note and mortgage, which had been assigned to him by Dickinson, and that before he purchased them, complainant represented to him that he was the owner of the land, subject to the mortgage, that the mortgage was all right and valid, a lien upon the premises, and that the complainant would pay the same. It was held that if the suppressed testimony of Dickinson had been admitted by the trial court it would have established such facts as would amount to an estoppel *in pais* against the defense interposed. *Hefner v. Dawson,* 63 Ill. 403, was a suit in assumpsit on a promissory note, wherein one of its makers, by his plea, verified by affidavit, denied the execution of the note by him. The proof showed that defendant had stated that the note was ''all right,'' and that if plaintiff would ''hold still'' he would pay him, and it was held that he thereby knowingly and designedly induced the plaintiff to omit taking any measures to collect the same of the other maker when he was solvent, until after he left the country, and that because of his acts and assurances defendant was estopped from denying the fact of the execution of the note. In *International Bank v. Bowen,* 80 Ill. 541, there were statements and representations made to the bank upon the strength of which it was induced to loan $5,000. The decision is based upon *Smith v. Newton,*

*supra. McIntire v. Yates,* 104 Ill. 491, is not similar to the instant case and the decision turned upon the application of the old doctrine that a principal is bound by the act of his agent within the scope of his authority. *Clarke v. Newton,* 235 Ill. 530, merely holds that the *prima facie* case made by introducing a note in evidence is not overcome by showing want of consideration, where the proof does not show that the plaintiff had notice thereof or that he purchased the note after maturity.

The doctrine of the case of *Olds v. Cummings,* 31 Ill. 188, has not been overruled by the Supreme Court. In *Connor v. Wahl,* 330 Ill. 136, the Supreme Court adhered to that doctrine but called attention to the fact that in the *Olds* case no question of estoppel arose, and that the doctrine of that case did not apply to a proceeding where the debtor by his conduct had defeated or curtailed his right to interpose the defense of usury against an innocent assignee. In the *Olds* case it was decided that in a bill to foreclose a mortgage or trust deed given to secure the payment of a negotiable instrument, the defense of usury is just as available against the *bona fide* holder of the instrument as it would have been against the original mortgagee. The *Olds* case has been followed in numerous cases. To cite a few: *Schultz v. Sroelowitz,* 191 Ill. 249; *Pittsburgh Plate Glass Co. v. Kransz,* 291 Ill. 84; *Hirsh v. Arnold,* 318 Ill. 28; *Firebaugh v. Seegren,* 265 Ill. App. 381. We hold that the trial court erred in ruling that appellants were estopped from invoking the defense of usury.

Complainant argues that "defendants have failed to establish their defense of usury by the clear and convincing weight of the evidence," and that the trial court erred in finding that such defense had been established. As complainant failed to comply, in any way, with Rule 35 of the Supreme Court, he is in no position to now question any part of the decree. Complainant concedes

that he did not prosecute a cross-appeal from any part of the decree. However, if he had complied with the rule, we would hold that the trial court did not err in finding that the defense of usury had been established.

Appellants claim that the court erred in not allowing them a credit of $890.40 because of extortion in a tax matter; that the court erred in not giving them credit for $1,000 on account of rent collected by the copartnership in November, 1925, and January, 1926; and that the trial court erred in not allowing them a credit of $40 because the copartnership fraudulently added that amount to a printing bill paid by them. We have considered the evidence bearing upon these three claims and we are not satisfied that the record sustains appellants' contentions.

Under the statute, usury works a forfeiture of all interest, and principal alone can be recovered. Appellants are, therefore, entitled to the following credits: (1) $4,000, the amount of the usury exacted from appellants by the copartnership at the time the loan was made; (2) Interest paid by appellants upon the bond issue, $15,505. The decree finds that there was due and owing from appellants at the time of the entry of the decree, principal, $22,000, and "interest on $22,000 at 7% per annum from October 10, 1932 to October 26, 1935, $4,681.33." This interest amount must be deducted.

A motion of complainant to dismiss the instant appeal was reserved to hearing. As it is without merit it is denied.

The decree of the superior court of Cook county, in the particulars just stated, is reversed, and the cause is remanded with directions to the trial court to modify the decree so as to conform with this opinion.

*Decree, in particulars stated, reversed, and cause remanded with directions.*

JOHN J. SULLIVAN, P. J., and FRIEND, J., concur.