### DICKEY *v.* PHOENIX FINANCE COMPANY.

#### 4-4636

#### Opinion delivered May 3, 1937.

*Simmons & Lister,* for appellant.

*Barber & Henry* and *Warner & Warner,* for appellee.

MEHAFFY, J.   The appellee, Phoenix Finance Company, instituted this action in the Sebastian chancery court against appellant, T. M. Dickey, alleging that it was a corporation with its principal place of business at Little Rock and that on February 12, 1936, appellant executed and delivered to it his promissory note wherein he agreed to pay appellee the sum of $200 in monthly installments of $16.50 on April 10, 1936, and on the tenth day of each succeeding month thereafter, up to and including February 10, 1937, and $18.50 on March 10, 1937, with interest from maturity until paid at the rate of ten per cent. per annum; that on the same date, and to secure the payment of said note, appellant executed and delivered his chattel mortgage upon one Chevrolet motor car,

Model CA, four-door sedan, motor number 3751946; that said mortgage was duly acknowledged and recorded, and provided in the event default should be made in any payment of said note, or to comply with the terms of said mortgage, the same should become due immediately. It further alleged that default had been made; that appellant had failed to pay any of said installments, and that the terms of said note and mortgage had been breached, and declared all of said installments due, and asked judgment for $200 and a decree foreclosing the mortgage, and an order directing the sale of the automobile.

On July 17, 1936, appellant filed answer admitting the execution of the note and mortgage and their delivery to appellee, but denied that appellee was entitled to recover the sum of $200 or to have a foreclosure of its mortgage; and he specifically pleaded usury as a defense. He alleged that he only received $139, and asked that the complaint be dismissed, and the note and mortgage canceled.

The court entered judgment against appellant for $200 with 10 per cent. interest from March 10, 1937, and for costs. The court, also, ordered a foreclosure of the mortgage and sale of the automobile. The case is here on appeal.

The appellant testified that he approached Sengel to borrow money and he thought he was borrowing the money from Sengel. He testified that he did not know he had signed any application; he just signed the papers Mr. Sengel told him to. After he had borrowed the $125 on February 3, 1936, he concluded that he needed more money, and wanted to borrow $200, and went back to Sengel's office and signed another application for $200. The application shows the gross amount of loan $200. From that was deducted what they called interest and investment fee reductions, $10. Ninety dollars and twenty-five cents was deducted to pay the first loan. There was another $5 deducted for Sengel Finance Company. One check was made to broker and borrower, $42, and a check to the borrower of $52.75.

The evidence shows that Sengel had the blanks of the appellee; that he appraised the property; made collections on loans and gave receipts therefor; that it was his custom and habit to prepare all mortgages for the Phoenix Finance Company, and he was the only person who inspected automobiles taken as security. He made appraisals on automobiles, and had filed suits in behalf of the finance company. Sengel testified he negotiated 75 to 100 loans for the Phoenix Company; that of the $200 loan, the $42 represented his commission; that Mr. Dickey, the appellant, received $148 and that $10 was charged as interest and deducted in advance out of the loan, which left $138; that he indorsed Dickey's note, but did not know why he was not sued; that he always indorsed the notes of the borrowers. Sengel testified that he acted merely as broker; but the undisputed facts are that he represented no other loan company; that he kept the blanks of the appellee in his office; he inspected the property mortgaged and appraised it; collected and gave receipts for the money due the appellee, and had brought suits for the appellee.

The evidence clearly shows that Sengel represented the appellee, and the payment of the $42 was a payment to appellee's agent. Section 7353 of Crawford & Moses' Digest reads: "The parties to any contract, whether the same be under seal or not, may agree in writing for the payment of interest not exceeding 10 per centum per annum on money due or to become due."

Section 7354 reads: "No person or corporation shall, directly or indirectly, take or receive in money, goods, things in action, or any other valuable things, in a greater sum or value for the loan or forbearance of money or goods, things in action, or any other valuable things, than is in § 7353 prescribed."

Section 13 of art. 19 of the Constitution of the state of Arkansas makes all contracts for a greater rate of interest than 10 per cent. per annum void as to principal and interest.

1148

If Sengel was the agent of the lender, then the payment to him of a bonus would necessarily make the contract usurious.

"Actual knowledge on the part of a creditor, accepting the benefit of a contract of loan or forbearance made by his agent, that such agent is exacting or has exacted a bonus or commission from the debtor charges the creditor with assent thereto and renders the contract usurious if the lawful rate of interest is thereby exceeded, whether or not the creditor receives any part of such bonus or commission." 66 C. J. 223.

Appellee's own evidence shows that it made one check payable to Sengel for $5 and another to Sengel and Dickey for $42. It knew that Sengel was to get both these checks, and the check to the borrower was made for $52.75. The evidence shows that all the loans of the appellee in Fort Smith were made through Sengel.

It is undoubtedly true that a borrower may pay a fee or bonus to his agent who procures a loan for him, and where this is done before or after the contract for the loan is executed, it is no concern of the borrower what disposition his agent may make of the bonus thus received, but if he is acting as the agent of the lender, and the bonus received, together with the interest charged, exceeds the lawful rate of interest, the contract will be void.

" 'If the person making the loan acted as the agent of the borrower alone, whether he received or did not receive a bonus is immaterial on the plea of usury; what the borrower pays to his own agent for procuring a loan is no part of the sum paid for the loan or forbearance of money.' But here, as we have shown, the transaction was but tantamount to the lender receiving direct from the borrower a bonus in excess of 10 per cent. per annum for the forbearance of his money." *Jones* v. *Phillippe,* 135 Ark. 578, 206 S. W. 40.

Whether the appellee received more than 10 per cent. is immaterial if its agent received a bonus with its knowledge.

"The courts will closely scrutinize every suspicious transaction in order to ascertain its real nature. In the determination of whether the contract is tainted with usury the court will look to the whole transaction; it will consider the surrounding circumstances, the occurrence at the time of the making of the agreement, and the instrument drawn. The court will look to and construe the transaction by its substance and effect, rather than its form, and if, from a consideration of the whole transaction, it becomes apparent that there exists a corrupt intent to violate the usury laws, the court will permit no scheme or device, however ingenious, to hide the face of usury." 66 C. J. 174.

From a consideration of the whole transaction in this case, we think it is apparent that there was an intent to charge ten per cent. interest per annum, in addition to the bonus paid to Mr. Sengel, whom all the circumstances show represented the appellee. *DuPrec* v. *Virgil R. Cross Mortgage Co.*, 167 Ark. 18, 267 S. W. 586, 1119.

In the case of *Dickinson-Reed-Randerson Co.* v. *Stroupe*, 169 Ark. 277, 275 S. W. 520, this court said: "The chancellor found that the whole transaction was a mere device to evade the usury law of the state of Arkansas, and that the case was ruled by the principles of law decided in the case of *Tompkins* v. *Vaught*, 138 Ark. 262, 211 S. W. 361, and *Dupree* v. *Virgil R. Cross Mtg. Co.*, 167 Ark. 18, 267 S. W. 586, 1119."

The court in that case also said: "If the plaintiff in fact made the loan, it could not divest the transaction of the taint of usury by afterwards selling the note and mortgage to another. To sanction such a transaction would be to uphold a palpable evasion of our usury statute. The formalities and contrivances resorted to, when considered in the light of the testimony, warranted the court below in holding that the evidence showed the transaction to be usurious."

So in this case, when all the circumstances are considered, the fact that no one else in Fort Smith represented the appellee; that the notes and mortgages were

made in Sengel's offices on Phoenix Finance Company forms; that the checks of the appellee were so made that it was bound to know that a considerable portion of it went to Sengel and not to the borrower, and the fact that the borrower only received $138 out of the $200, together with all the other facts and circumstances in the case, make it apparent that the scheme was merely an evasion of the Constitution and statute providing against usury.

The decree of the chancery court is reversed, and the cause remanded with directions to dismiss plaintiff's complaint and cancel the note and mortgage.